Cadle and others vs. McLean.

CADLE and others vs. McLEAN.

*February 24 — March 9, 1880.*

CONTRACTS: Cutting and manufacturing timber. *(1) What instruments to be filed with lumber inspectors. (2) Contract as to cutting, removing and manufacturing timber, construed.*

1. Sec. 19, ch. 42, Tay. Stats. (p. 757), refers to mortgages and other instruments affecting title to logs already cut and marked when such instruments are executed, and not to sales or mortgages of standing timber.

2. By the terms of a written instrument, defendant sold T. & Co. all the merchantable pine timber standing on certain lands; T. & Co. were to place a certain mark on the end of each piece of timber cut, and to cause the timber to be manufactured into lumber and shingles, but were not to sell or otherwise dispose of any timber or lumber manufactured therefrom until the purchase money should be paid; the rights of property in and possession of the timber and lumber were to remain in defendant until such payment; and he had full power to take possession

and sell, on notice. *Held*, that the contract was either a conditional sale of personal property by defendant, or a chattel mortgage to him, taking effect as the timber was cut; and in either case the filing of the instrument in the proper clerk's office without recording it in the registry of deeds, was sufficient (under ch. 113 of 1873, or Tay. Stats., 769, sec. 3), to protect defendant's rights against a subsequent purchaser from T. & Co.

APPEAL from the Circuit Court for *Portage* County.

Replevin, for lumber. On the 17th of June, 1878, *Mc-Lean* and the firm of Thompson & Co., of Stevens Point, entered into a written contract whose provisions are thus stated by Mr. Justice COLE: "The defendant sold Thompson & Co. all the merchantable pine standing on the land named, for a sum to be paid as specified. Thompson & Co. were to mark on the end of each log or stick of timber cut on the land a certain mark. They were to cause the timber to be manufactured into lumber and shingles at Stevens Point, or some other point on the line of the railroad, and were not to dispose of any timber or lumber manufactured therefrom, until the purchase money was paid, without the consent of the defendant. And it was expressly agreed that the right of property and the right to the possession of the timber and lumber thus manufactured, should remain in the defendant until the purchase money was paid; and [in case of any failure to make payment, or in case defendant should at any time feel himself insecure], defendant had power to take possession of and sell the timber and lumber at public or private sale, upon giving ten days' notice." This agreement was filed in the office of the city clerk of Stevens Point in August, 1878.

Under this contract, Thompson & Co. cut the timber from the land, between the last of July and the 7th of November, 1878, shipped the logs to Stevens Point, and there had them sawed into lumber, with defendant's knowledge. On the 10th of October, 1878, Thompson & Co. entered into a contract with the plaintiffs, by which the former agreed to

manufacture for the latter, and plaintiffs agreed to purchase, a quantity of lumber from said logs. On the 6th of November following, Thompson & Co. delivered to plaintiffs nearly 400,000 feet of lumber so manufactured, and received from them payment therefor. Plaintiffs had no actual notice or knowledge of defendant's rights in respect to the lumber, until November 28, 1878. About the 5th of December following, defendant took possession of said lumber to secure payment of a part of the purchase money which had become due on the first of that month and remained unpaid. After due demand and refusal of the lumber, plaintiffs brought this action to recover possession thereof.

By direction of the court, a verdict was returned for the defendant; and, from a judgment on the verdict, plaintiffs appealed.

The cause was submitted for the appellants on the brief of *Wm. H. Packard*, their attorney, with *Walter R. Barnes*, of counsel; and for the respondent on the brief of *G. W. Cate* and *A. Eaton*.

For the appellants it was contended, 1. That under the contract Thompson & Co. took an interest in the real estate (*Young v. Lego*, 36 Wis., 394; *Warner v. Trow*, id., 196; *Strasson v. Montgomery*, 32 id., 52; *Daniels v. Bailey*, 43 id., 566); and that so much of the instrument as granted or reserved rights to the defendant, also affected the realty, and should have been recorded in the registry of deeds. *Wescott v. Delano*, 20 Wis., 514; *Frankland v. Moulton*, 5 id., 1; *Vorebeck v. Roe*, 50 Barb., 302; *Farmers' L. & T. Co. v. Hendrickson*, 25 id., 484; *Warren v. Leland*, 2 id., 613; *Goodyear v. Vosburgh*, 57 id., 243; *S. C.*, 39 How. Pr., 377; *Potts v. N. J. Arms Co.*, 17 N. J. Eq., 395; *Johnson v. Moore*, 28 Mich., 3; *Driscoll v. Marshall*, 15 Gray, 62; *Sterling v. Baldwin*, 42 Vt., 306. 2. That Thompson & Co. were either mortgagors of real estate in possession or vendees in possession, and in either case were legal owners of the timber

Cadle and others vs. McLean.

as fast as cut; and defendant could not maintain replevin against their *bona fide* vendees. *Beckwith v. Philleo*, 15 Wis., 223; *Northrup v. Trask*, 39 id., 515; *Andrews v. Jenkins*, id., 476; *Martin v. Scofield*, 41 id., 167; *Marsh v. Bellew*, 45 id., 36; *Ortman v. Shaw*, 37 Mich., 448; *Wilson v. Maltby*, 59 N. Y., 126. 3. That at all events, under the contract and the acts of the defendants Thompson & Co. had a license to enter and cut the timber, and the legal right to it passed to them (*Gillet v. Treganza*, 6 Wis., 343; *Marsh v. Bellew, supra; Buck v. Pickwell*, 27 Vt., 157–166; *Owens v. Lewis*, 46 Ind., 489; 1 Sugden on Vend., 8th Am. ed., 183, note n; 1 Chitty on Con., 11th Am. ed., 416, note j); and if the licensor would protect himself from this usual result, he must (at least as to third persons without notice) protect himself by registry. 4. That if, by virtue of the intent to sever from the realty, the subject matter of the contract be regarded as personalty, still the instrument is in effect a chattel mortgage by T. & Co. to the defendant; and, being of property to be acquired, is void. To the point that the instrument was a mortgage, counsel cited *Andrews v. Jenkins, supra; Musgat v. Pumpelly*, 46 Wis., 660; *Hurd v. Brown*, 37 Mich., 484; *Gibson v. Eller*, 13 Ind., 124; *Johnson v. Crofoot*, 53 Barb., 574; *Coe v. Cassidy*, 72 N. Y., 133, 137; *Fessler's Appeal*, 75 Pa. St., 483; *Morrow v. Turney*, 35 Ala., 131; *Woodman v. Chesley*, 39 Me., 45; Herman on Chat. Mort., 47, 54. If the transaction was a mere conditional sale, then, on nonperformance of the conditions, the rights of the vendees might be declared forfeited, and the title to the property be again absolute in the vendor; but, to accomplish this, defendant must have given notice to T. & Co., must have rescinded the contract *in toto*, and must have restored those parties to their former status. *Giddey v. Altman*, 27 Mich., 206; *Deyoe v. Jamison*, 33 id., 94; *Cushman v. Jewell*, 14 N. Y. Sup. Ct., 525; *Keogh v. Daniell*, 12 Wis., 164. By not doing this, but virtually pro-

ceeding as for his debt, defendant has recognized the transaction as a sale to T. & Co., with a chattel mortgage back to him of the logs to be cut from the growing timber of the mortgagors. Such a mortgage is void. *Single v. Phelps*, 20 Wis., 398; *Mowry v. White*, 21 id., 417; *Hunter v. Bosworth*, 43 id., 583. 5. That, whether the contract is a mortgage or a conditional sale, the instrument is one affecting the ownership of marked logs, and, to operate as notice in favor of one out of possession, must be recorded with the lumber inspector of the district. Tay. Stats., 757, § 19; *McCutchin v. Platt*, 22 Wis., 561; *Kimball v. Post*, 44 id., 476; Herman on Chat. Mort., 158–9. 6. That even if it should be held that the transaction was a conditional sale, and that no record of it was necessary in any place, still, defendant having parted with the possession to apparent owners, a sale by them to *bona fide* purchasers would pass the title as against defendant. 1 Parsons on Con., 6th ed., 538; 1 Chitty on Con., 11th Am. ed., 534; 1 Smith's L. C., 6th ed., 1093; 11 U. S. Dig., p. 861, sec. 494, and cases there cited; *Rice v. Cutler*, 17 Wis., 358; *Smith v. Lynes*, 5 N. Y., 41; *Crocker v. Crocker*, 31 id., 507; *Wait v. Green*, 36 id., 556; *Lewis v. Palmer*, Hill & Den., 68; *Steelyards v. Singer*, 2 Hilt., 96; *Rawls v. Deshler*, 4 Ab. App. Dec., 12; *Mich. C. Railroad Co. v. Phillips*, 60 Ill., 190; *Young v. Bradley*, 68 id., 553; 13 id., 610; 21 id., 380; *Goodwin v. Railroad Co.*, 111 Mass., 487; *Boynton v. Libby*, 62 Me., 253; *Vaughn v. Hopson*, 10 Bush, 337; *Dudley v. Abner*, 52 Ala., 572. These cases proceed upon the equitable doctrine, that where one of two innocent persons must suffer, he must bear the loss who has made it possible; and upon the further equitable doctrine, that secret liens upon chattels by one out of possession are not favored, but are against the policy of the law. *Blakeslee v. Rossman*, 43 Wis., 123.

For the respondent it was argued, 1. That this was not a contract or instrument in any way affecting the ownership of any mark of logs, but was a conditional sale of standing tim-

ber, and all else in the writing was a means of identifying the timber when it should be removed, to enable the vendor to follow it and enforce payment. If the writing transferred anything to the vendees, it was an interest in the land upon which the timber stood. *Young v. Lego*, 36 Wis., 394; *Daniels v. Bailey*, 43 id., 566. The provisions of the revised statutes relating to ·the marking of logs, etc., were designed to apply to logs, etc., intended to be driven to market, or to the place of manufacture, in the *waters* of this state, where logs of different owners are inevitably mixed together, and the only means of separation is by the marks upon them. See secs. 1740, 1747. These provisions should not be held to apply to logs or timber carried by railroad from the place of cutting to the place of manufacture, and constantly in the actual possession of the owner. 2. That all the provisions of the contract relating to the enforcement of payment (if they have any effect in view of the express reservation of the right of property and possession to defendant), amount to nothing more than an agreement that, in case of nonpayment, the contract shall be treated as a *chattel mortgage*. 3. That if the contract was a mere *conditional sale* of personal property, the title and possession to remain in the vendor until payment of the purchase price, then the filing of the contract in the proper clerk's office was sufficient to protect defendant's interest against any sale by Thompson & Co. R. S., sec. 2317; *Hunter v. Warner*, 1 Wis., 141; *Aultman v. Mallory*, 25 Am. R., 478; 12 id., 187, 663.

COLE, J. It seems to us there is no foundation for the claim that the contract between the defendant and Thompson & Co. was one which the statute contemplated should be filed and recorded in the office of the district lumber inspector, in order to be valid as against the plaintiffs. The statute (sec. 19, ch. 42, Tay. Stats.) undoubtedly refers to the sale and transfer of logs which are cut, having upon them a recorded

mark which distinguishes them from other logs. This is very apparent from the preceding section, which provides that the owner of logs may use on his logs any mark not before used by any person in his lumber district, and this mark shall be recorded in the office of the district lumber inspector. Then comes the provision for recording all mortgages, bills of sale or other instruments in any way "affecting the ownership of any mark of logs" in the inspector's office, provided the instrument specifies "*the marks placed upon the logs, and where they were cut.*" It is evident that, by a kind of figure of speech, the language "ownership of any mark," etc., represents the ownership of the marked logs themselves. The statute evidently refers to a transfer of logs which are already cut, having a recorded mark upon them, and has no application to a sale or mortgage of standing timber thereafter to be cut into logs. A bare reading of the statute is deemed sufficient to show the correctness of this construction without further remark.

But the learned counsel for the plaintiffs insists that the contract had for its subject matter real estate; that it created between the parties thereto either the relation of vendor and vendee, or of mortgagee and mortgagor; and that, as there was a change of possession in fact of the timber, or of the logs made therefrom, it was necessary that the defendant, in order to preserve his rights under the contract as against the plaintiffs, should have had the instrument recorded in the office of the register of deeds. The contract was in fact filed in the office of the city clerk of Stevens Point, where Thompson & Co. resided, August 23, 1878. It is true this court has decided that a sale of standing timber was a sale of an interest in land within the statute of frauds (*Strasson v. Montgomery*, 32 Wis., 52; *Warner v. Trow*, 36 Wis., 196; *Young v. Lego*, id., 394; *Daniels v. Bailey*, 43 Wis., 566); but it does not follow from this that it was essential that defendant should record his contract in the office of register of deeds in order

to preserve his rights. We have not been referred to any statute which requires that such an instrument should be recorded as a conveyance, to secure the rights of parties to it.

Suppose the contract had been that Thompson & Co. were to cut the standing timber on the land and manufacture it into lumber on shares, the title of the property to remain in the defendant until the lumber was equally divided. There could be no doubt in that case that the defendant would hold the lumber until a division was made, even as against a purchaser from Thompson & Co. But if we refer to the terms of the contract, we find that the intention of the parties seems to have been to make a conditional sale of the standing timber — the title to remain in the vendor until the consideration was paid, — or, what is more probable, to make the instrument operate as a mortgage of personal property, which would take effect as such as and when the timber was cut and severed from the freehold. Consequently, whether the instrument be treated as a conditional sale of the standing timber and coming within the purview of chapter 113, Laws of 1873, or in the nature of a chattel mortgage within the meaning of section 3, ch. 45, Tay. Stats., taking effect as the timber was severed from the freehold, seems to be quite immaterial, because the result is the same, the instrument being filed in the proper office. The contract evidently intended that the right of property and the right of possession in the timber cut should remain in the defendant until payment of the purchase money. Within the doctrine of *Claflin v. Carpenter*, 4 Met., 580, and *Douglas v. Shumway*, 13 Gray, 498, the contract might be sustained as a mortgage of personal property, taking effect when the timber was cut. It is, perhaps, the most unfavorable view for the defendant to treat the contract as being in the nature of a mortgage of personal property, as it doubtless was intended it should be. But, in whatever aspect the case is considered, we think the charge of the learned circuit court was correct, that the defendant could hold

the lumber as against the plaintiffs, the vendees of Thompson & Co.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.