## BUNN vs. THE VALLEY LUMBER COMPANY.

*February 8 — March 2, 1881.*

LOGS AND LUMBER. *(1) When title passes. (2) What instruments filed in lumber inspector's office are notice.*

By written contract, A, in terms, sold, assigned and transferred to B, all his interest in timber then standing on certain land of A, reserving a lien upon "said timber and saw-logs cut therefrom," until the conditions of sale should be performed; and B was to pay certain sums of money, to have possession of the logs cut, and to run them and make due efforts to sell them; and he agreed that all the timber and logs of which, by the contract, he "acquired title and possession," should be cut and removed within a certain time. *Held,*

1. That this was not a conditional sale of the logs, but passed the title to the timber and logs to B, and A had only a lien thereon.

2. That as the logs were not cut and marked when the instrument was executed, the filing of such instrument *in the office of the lumber inspector* did not operate as notice, or protect the vendor's lien as against a purchaser from the vendee for value, without actual notice. *Cadle vs. McLean,* 48 Wis., 620.

LYON, J., dissents, holding that the doctrine of *Cadle vs. McLean* should be overruled.

APPEAL from the Circuit Court for *Eau Claire* County.

Replevin, for logs. The facts found by the court were substantially as follows: On the 6th of January, 1876, one Cornell sold to one Snow all his interest in the pine timber suitable for saw logs upon certain lands in Chippewa county belonging to Cornell. The contract of sale was in writing, under seal, duly witnessed, etc., and was duly recorded on the 27th of January, 1876, in the office of the lumber inspector of the district which includes Chippewa and Eau Claire counties. By the terms of this contract, Snow was to pay for the timber $1,500, as follows: $100 at the date of the agreement, $150 on the 1st of February, $625 on the 1st of May, and $625 on the 1st of September, of the same year; and he was to cut and remove the timber from the land during the logging season of 1875–6, if it could be done with due and reasonable efforts on

his part, but otherwise he was to have also the logging season of 1876–7 for that purpose. It was further provided that the logs so to be cut were to have a certain bark mark and a certain end mark, described in the contract; and Cornell was to have a lien upon the timber and logs until payment of the money by Snow. Snow paid the $100 in cash at the execution of the contract, and also the $150 due February 1; and he also on the 6th of January gave his promissory notes for the other two amounts, but these notes are wholly unpaid. Pursuant to the contract, Snow entered upon said premises, and during the logging season of 1875–6 cut therefrom and put into the stream 900,000 feet of saw logs, of the value of $4,500, marked with the bark mark mentioned in the contract; and on the 21st of March, 1876, he sold the logs to the defendant company. On the 14th of February, 1876, Cornell, for a valuable consideration, sold and assigned Snow's two notes and the said logging contract, and the said logs and timber, to the plaintiff; and this assignment was duly recorded in the office of the lumber inspector of said district on the same day. Subsequently, and before the commencement of this action, plaintiff demanded said logs of the defendant, and the latter refused to deliver them, and converted them to its own use.

On these facts the court held that plaintiff was entitled to judgment for $1,406.89, the amount of his special interest in the logs; and judgment was rendered accordingly, from which the defendant appealed.

The cause was submitted on the brief of *W. F. Bailey* for the appellant, and that of *Tyler & Dickinson* and *Hollon Richardson* for the respondent.

COLE, C. J. In *Cadle v. McLean*, 48 Wis., 630, it was decided that section 19, ch. 42, Tay. Stats., refers to a sale and transfer of logs already cut and marked, and had no application to a sale or mortgage of standing timber which was thereafter to be cut into logs. If the construction placed upon the

statute in that case was correct — and a majority of the court are still of the opinion that it was,— then it necessarily follows that the filing of the contract under which the plaintiff claims, .in the lumber inspector's office, did not operate to affect an innocent purchaser of the logs from Snow with notice of his ,rights. But if the contract had related to logs which were already cut, then it would come under the above provision, and the filing thereof in the lumber inspector's office would protect the plaintiff's lien, even as against a subsequent purchaser from Snow. *McCutchin v. Platt*, 22 Wis., 561. In *Cadle v. McLean*, whether the contract was regarded as a conditional sale, or in the nature of a chattel mortgage taking effect as the timber was cut, it was filed in the proper office. Therefore, in the absence of actual notice to the purchaser from Snow of the existence of the Cornell and Snow contract, we are unable to perceive upon what ground plaintiff can claim the benefit of the lien which was reserved to the vendor in that contract. No actual notice of the existence of the contract on the part of the defendant was shown, or attempted to be shown, upon the trial.

But the learned counsel for the plaintiff insists that the contract in question was a conditional sale, by which the property or ownership of the standing timber and of the logs when cut were to remain in the vendor until the money to become due on the contract was paid. If that construction of the contract were consistent with its language, we do not see that this would aid the plaintiff's case as against a purchaser from Snow in good faith; for chapter 113, Laws of 1873, places a contract for the sale of personal property, where the title or right of property remains in the vendor, and the possession in the vendee, until the purchase price is paid or conditions of sale complied with, upon the same footing as chattel mortgages; and such contract must be filed as a chattel mortgage in order to be valid against a purchaser from the vendee. *Williams v. Porter*, 41 Wis., 422; *Kimball v. Post*, 44 Wis., 471. We

assume, for the purposes of this case, that the purchase must be without notice of any existing equity or right. If this instrument is held to amount to a conditional sale, it was not filed as chapter 113 required. What rule would obtain in the absence of that statute, providing the instrument were held to be a conditional sale of the timber, we need not, therefore, stop to consider; for the law just referred to puts such contracts upon the footing of chattel mortgages, to be filed accordingly. But we think the contract could not be said to be a conditional sale of the timber. The vendor in express terms sold, assigned and transferred to the vendee all his interest in and to the pine timber standing upon the land mentioned, which was suitable for merchantable saw logs, "reserving and having a lien in and to said pine timber and saw logs cut therefrom" by the vendee, until all the conditions of the sale were fully performed ·by the latter. In consideration of the pine timber thus sold and conveyed, the vendee agreed to pay the sums of money as specified in the contract. But the vendee was to have possession of the logs cut, and was to run the same, and make due efforts to sell them. He agreed that all the pine timber or saw logs which by the contract he "acquires title or possession to," should be cut and removed from the land during the logging season of 1875 and 1876, providing the logging season of those years was such as would warrant it, with due and reasonable efforts on his part. These provisions of the agreement show, as we think, that the parties intended that· the title and ownership of the timber standing upon the land, and of the logs when cut, should pass to and become vested in the vendee — the vendor reserving or having a lien upon the same as security for the payment of the consideration money. This feature of the contract distinguishes it from the agreements which were considered in *Sawyer v. Fisher*, 32 Me., 28; *Prentiss v. Garland*, 67 Me., 345; and *Homans v. Newton*, 4 Fed. Rep., 880. The agreements in those cases were held in effect to amount only to a license or permit on the part

of the owner of land, given to another party, to cut and re-move timber therefrom, upon the condition that the title to all lumber taken should continue and remain in the owner until the stumpage had been paid. This contract, as we have said, vests the title and ownership of the standing timber, and the logs when cut, in the vendee.

But while it is the manifest intention of the contract to pass the title to the vendee, it is expressly stipulated that the vendor should have a lien upon the property for the purchase price, and that lien seems to have been transferred to the plaintiff. And while there would seem to be an insuperable objection to giving effect to this lien upon the property as against an inno-cent purchaser from the vendee for value, there is the strongest reason for enforcing it as against one who purchased with actual notice. In *Ballard v. Burgett*, 47 Barb., 646, and *S. C.*, 40 N. Y., 314, the plaintiffs sold France a yoke of oxen, and it was agreed that the oxen were to remain the property of the plaintiffs until they should be paid for by France, the latter in the mean time having possession. France afterwards, and before he had paid for them, sold the oxen to the defend-ant, who paid a full price and bought in good faith without notice of the plaintiff's rights. It was decided that the de-fendant acquired no title as against the plaintiffs. The case has been approved in subsequent cases in New York. See Wait's Sup. to Table of Cases, 21. That was a conditional sale, or perhaps an agreement to sell. In analogy to that case, if the contract before us is not a conditional sale or chattel mortgage, so as to come within our statute, the lien created by the contract, it would seem, might be enforced against a pur-chaser with notice. Certainly there is no valid reason for saying that such a purchaser acquired a title superior in equity to the rights of the vendor under his lien.

The question whether the defendant had actual notice of the lien when it purchased the logs of Snow, does not seem to have been raised or litigated on the trial. The plaintiff doubtless

relied on the filing of the contract, and of the assignment thereof, in the lumber inspector's office, as sufficient to charge the defendant with knowledge of the contents of these instruments; but for the reasons above given it is clear that this view cannot be sustained. Still it is possible the plaintiff may show on another trial that the defendant had actual notice of the lien when it purchased the property, and, if so, there is no hardship in enforcing it for the unpaid purchase money. The lien was created by the contract, and rests upon equitable principles. The theory and object of this suit, as we understand them from the pleadings, are to enforce that lien. As a very important and material fact in the case was overlooked, or not tried, we have concluded to reverse the judgment and order a new trial. This practice has sometimes been adopted in cases tried by the court, where it was apparent that a cause had not been tried upon its merits, or where some fact upon which the rights of the parties depended had not been fairly litigated.

The judgment of the circuit court must be reversed, and a new trial awarded.

Lyon, J. I cannot concur in the judgment of the court in this case, and will briefly state the grounds of my dissent therefrom. The judgment of the court seems to be founded mainly upon the case of *Cadle v. McLean*, 48 Wis., 630. In that case the contract under which McLean, the vendor, claimed the right to the possession of the logs there in controversy, provided expressly that the title to or right of property in the logs should remain in him until the purchase money should be paid. The contract also reserved to McLean the right of possession in terms, but it necessarily gave the actual possession of the property to the vendors of the plaintiffs, who were to cut the timber, run the logs to Stevens Point, and there cause them to be manufactured into lumber and shingles. Clearly, therefore, it was just such a contract as is

described in chapter 113 of the laws of 1873 (R. S., 656, sec. 2317), and which is therein declared invalid as against all persons not parties thereto unless filed in the office of the proper town clerk. The act of 1873 in terms includes all contracts of the character therein described. No exception is made. It may well be held, therefore, that it operated to amend the then existing statute, which provided for recording in the office of the district lumber inspector instruments affecting the ownership of logs, so as to require contracts of this peculiar class to be filed with the town clerk. Hence, it would have been sufficient in *Cadle v. McLean, supra* (and the same result would have been reached), had we held as above indicated, without giving a construction to the then existing statute in respect to recording log contracts. The statute last mentioned is chapter 167 of 1864, sec. 12, as amended by chapter 259 of 1864, sec. 2, and chapter 57 of 1866, sec. 3 (Tay. Stats., 757, § 19). But we went further in that case, and held that the statute above cited is inapplicable to contracts in respect to logs entered into before the logs are cut. Subsequent reflection and investigation have convinced me that the statute ought not to be so restricted in its operation. The object of the statute manifestly is, to enable persons dealing in logs readily to ascertain if logs marked with any particular mark are incumbered in any manner; and to this end the office of the district lumber inspector, with which such dealers are presumably in frequent communication, was thought by the legislature to be the most convenient and accessible place of record for all parties. The location of the pine lands of the state, mainly in regions sparsely settled, in which organized towns are frequently of large territorial extent, and the public offices therein difficult of access; and the nature of the lumber business, which cannot regard town lines, but must be carried on where the timber grows, and where there are rivers upon which to run the logs or lumber to a market,— rendered it necessary that some more convenient place than the office of

Bunn vs. The Valley Lumber Co.

a town clerk, or even a register of deeds, should be desig-
nated for the recording of log contracts. And so the legisla-
ture designated the lumber inspector's office of the proper
district as the place of record therefor, and enacted, in sub-
stance and effect, that the record of such an instrument in that
office should be constructive notice of its contents to all the
world.

Every reason for the enactment applies with as much force
to contracts affecting logs, made before the logs are cut, as to
those made after they have been cut. In either case the ob-
jects to be accomplished are, to protect persons not in posses-
sion who have an interest in logs marked with a particular mark,
and to enable persons proposing to purchase such logs to ascer-
tain the true state of the title thereto. The principal reason
(and in my opinion the only one worthy of much consideration)
why we held that the statute does not apply to contracts made
before the logs were cut, was that it contains a *proviso* to the
effect that the instrument, to be entitled to record, must spe-
cify, not only the marks placed upon the logs, but also *when
they were cut.* It now seems to me that, in view of the man-
ifest object and intention of the statute, we attached too much
importance to this language. The clause was evidently in-
serted to facilitate the identification of the logs affected by the
instrument; and that object can be attained as well by a state-
ment in the contract of the time when they were to be cut, if
not cut when the contract was made. I see no satisfactory
reason why the contract before us in this case, which states
when the logs are to be cut, is not within the statute, and a
substantial compliance with its requirements. This view, in
my opinion, accords best with the rules for the construction of
statutes, and those relating to the effect to be given to provisos
therein.

The contract under consideration is not for a conditional
sale of the standing timber, as was the contract in *Cadle v. Mc-
Lean,* and hence is not within chapter 113 of 1873, which con-
trolled that case. Neither is it an ordinary chattel mortgage,

for the legal title to the timber passed by virtue of it to the purchaser. The filing of the instrument in the town clerk's office, therefore, was not authorized by any statute, and, had it been so filed, the filing would not have operated as constructive notice of its contents. Neither would the recording of it in the office of the register of deeds have been of any benefit to the vendor, although, while the timber remained standing, such record would have protected the purchaser. The vendor needed no protection until the timber was cut and became personal property, and a record in the register's office would then have been entirely inoperative to give such protection. Such a record would operate as constructive notice of the condition of the title to the realty alone, not of personal property severed therefrom.

This contract gives the vendor an equitable lien upon the logs as security for the purchase money of the timber; and unless the rights of the vendor can be protected as against third persons without actual notice of the contract, by recording the contract in the lumber inspector's office, I am unable to perceive how they can be protected at all. It cannot, I think, be presumed that the legislature intended to exclude from the statute the important class of contracts to which this contract belongs, and thus deprive vendors of the means of giving constructive notice of their liens, which will bind all persons dealing with logs bearing the specified marks.

I think we shall best carry out the intention of the legislature, and at the same time give a reasonable construction to the language of the statute, by holding that the record of the contract in the office of the proper lumber inspector was constructive notice of its contents to the defendants, and that they purchased the logs in controversy subject to the lien of the vendor reserved in the contract. The circuit court so held. My opinion is that the judgment should be affirmed.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.