MELVIN J. CLARK *v*. B. B. RICHARDS LUMBER COMPANY and Another.[1]

May 19, 1897.

Nos. 10,626—(234).

### Sale of Standing Timber—Retaining Title—Recording Agreement.

A written instrument for the sale of standing timber, to be severed and carried away from the land and manufactured into lumber by the vendee, in which it was provided that the title to the timber and its manufactured products should remain in the vendor until the entire purchase price was paid, and for a release from time to time of the vendor's claim upon blocks of not less than one million feet of the lumber, upon the payment of an agreed price per thousand feet, *held* to be either a conditional sale contract or a chattel mortgage to take effect as the timber was severed from the land, and that in either case it should have been filed in the proper office.

### Same—Insolvency of Vendee—Rights of Intervening Creditors and of Assignee.

Such instrument was not filed until two months before the vendee made an assignment in insolvency. *Held*, that the assignee could not avoid the contract solely on the ground that he represented creditors whose debts were contracted intervening the making and filing of it, but if the instrument was withheld from record pursuant to an agreement of the parties thereto, in order that the credit of the vendee might not be impaired, it would be a fraud as to creditors of the vendee who became such relying upon its apparent absolute ownership of the property in its possession, and as to such creditors the vendor would be estopped, and they would be entitled to have his claim upon the property subordinated

[1] Reported in 71 N. W. 389.

to their equity to have their respective debts first paid out of the property. *Held*, further, that the assignee can enforce such equity.

**Same—Issues—Findings.**

> *Held*, that the trial court erred in refusing to find upon issues herein as to such alleged agreement.

Appeal by Duluth Trust Company, as assignee in insolvency of defendant lumber company, from an order of the district court for St. Louis county, Moer, J., denying a new trial, after findings that plaintiff was entitled to the sum of $258,632.25 under the contract mentioned in the opinion and to a first lien upon certain lumber cut under that contract, and upon all the standing pine timber covered by said contract, and directing a sale of the standing timber and of the lumber. Reversed.

*Cotton, Dibell & Reynolds*, for appellant.

That the assignee may enforce the rights of the general creditors see Cragin v. Carmichael, 2 Dillon, 519; Kane v. Rice, 10 N. B. R. 469; In re Leland, 10 Blatchf. 503; Mitchell v. McKibbin, 8 N. B. R. 548; Pratt v. Curtis, 6 N. B. R. 139; Edmondson v. Hyde, 7 N. B. R. 1; Bradshaw v. Klein, 1 N. B. R. 542; Glenny v. Langdon, 98 U. S. 20; Trimble v. Woodhead, 102 U. S. 647; Moyer v. Dewey, 103 U. S. 301; Thomas v. Foote, 46 Minn. 240; Walton v. Eby, 53 Kan. 257; Chapin v. Jenkins, 50 Kan. 385; Southard v. Benner, 72 N. Y. 424. That an agreement or understanding not to file the instrument is a material fact, and postpones such instrument until satisfaction of the claims of creditors who extended credit upon the belief and faith that the property of the insolvent was owned free from any claim or adverse title, see Standard v. Gunther, 67 Wis. 101; Sanger v. Gunther, 73 Wis. 354; Flemington v. Jones, 50 N. J. Eq. 244; Chapin v. Jenkins, supra; Goll v. Miller, 87 Iowa, 426.

*Cash, Williams & Chester*, for respondent.

The assignee representing the creditors generally stands in the shoes of the assignor simply and is not a purchaser in good faith. See Dyer v. Thorstad, 35 Minn. 534; Thomas v. Foote, 46 Minn. 240; Shay v. Security, 67 Minn. 287, 69 N. W. 920. The agreement was one for the sale of an interest in land, and governed wholly by the registry act pertaining to real estate. Pine v. Tozier, 56 Minn. 288; Lillie v. Dunbar, 62 Wis. 198; Bent v. Hoxie, 90 Wis. 625; Bent v.

Barnes, 90 Wis. 631. As to estoppel of the vendor to assert title, see Trenton v. Duncan, 86 N. Y. 221; Turner v. Coffin, 12 Allen, 401; Andrews v. Lyons, 11 Allen, 349; Plumer v. Lord, 9 Allen, 455; Allum v. Perry, 68 Me. 232; Zuchtmann v. Roberts, 109 Mass. 53; Robb v. Shephard, 50 Mich. 189; Parker v. Moore, 59 N. H. 454; Hefner v. Vandolah, 57 Ill. 520; Howe v. Farrington, 82 N. Y. 121; Board v. Otis, 62 N. Y. 88; Pickard v. Sears, 6 A. & E. 469; Clinton v. Town, 50 Conn. 84; New York v. Rothery, 107 N. Y. 310; Kuhl v. Mayor, 23 N. J. Eq. 84; Sutton v. Wood, 27 Minn. 362; Pence v. Arbuckle, 22 Minn. 417; Lowry v. Mayo, 41 Minn. 388; Stuart v. Lowry, 42 Minn. 473; Nell v. Dayton, 43 Minn. 242; Welsh v. Cooley, 44 Minn. 446; Stevens v. Ludlum, 46 Minn. 160; Irish v. Ludlum, 49 Minn. 344. In the absence of a statutory provision an assignee for the benefit of creditors stands solely in the shoes of his assignor, and has no higher right than the assignor himself, and as such can not set aside any transfer or conveyance of his made by his assignor in fraud of creditors or otherwise. Flower v. Cornish, 25 Minn. 473.

START, C. J. On November 2, 1894, the plaintiff and the defendant lumber company executed the contract which is made a part of the complaint herein, whereby the plaintiff agreed to sell, and the lumber company to buy, all of the pine timber standing on certain lands owned by the plaintiff in the county of Carlton, Minn., for the sum of $265,000. The lumber company paid the purchase price by $250 in cash, and the balance, $264,750, by its eight promissory notes, with annual interest at six per cent., due at different times, the first on or before December 1, 1894, and the last on or before December 1, 1898. The right to enter upon the lands and cut and remove the timber at any time within ten years was given to the lumber company by the contract, but it also contained the following conditions and restrictions:

"Said party of the second part further agrees that it will keep the logs and timber which it shall cut and remove from the lands aforesaid separate from all other logs or timber, and that it will keep the lumber and shingles which it shall manufacture therefrom marked C. L. P., and piled separate and apart from all other lumber and shingles, in such manner that the same may be readily identified * * * until the purchase price for the said timber shall be fully paid,

or until permission in writing shall be given by said party of the first part * * * to sell and dispose of the said lumber and shingles. It is further agreed that the said party of the second part shall at any time have the right to pay for any lot or lots of the said lumber to be manufactured from the said timber, in blocks of one million feet or upwards, of mill-run lumber, mill culls out, at the rate of five dollars per thousand feet in the year 1895, and thereafter at six dollars per thousand feet, and upon making such payment the title to the lumber so paid for shall pass unto and vest in the said party of the second part. * * * It is further mutually agreed and understood by and between the parties of the first and second parts hereto that the title to the said pine timber, and any and all lumber, shingles, or other products that may be manufactured therefrom, shall be and remain in the said party of the first part until the entire purchase price therefor shall be paid, as hereinbefore provided."

This contract was filed in the office of the city clerk of Duluth, the place of the lumber company's sawmill and principal office, on September 24, 1896, and not before. The lumber company made default in its payments under this contract, and on November 17, 1896, it made an assignment for the benefit of its creditors under the insolvency laws of the state, to the defendant trust company, at which time it had in its possession a large quantity of lumber manufactured from logs cut pursuant to the contract. Thereafter the plaintiff brought this action to have it determined that he was the owner of the remaining pine timber upon the lands described in the contract, and that he was the owner of all of the lumber in possession of the defendants manufactured from the logs cut from his land pursuant to the contract, and to have the contract annulled. The defendant trust company, among other defenses, alleged, substantially, the following:

That at the time of the execution of the contract, and as a part of the same transaction, it was mutually agreed between the parties thereto that the provisions thereof reserving title in the vendor should not be made public, and that the contract should not be filed or recorded, in order not to injure or interfere with the business of the lumber company. * * * That the lumber company, with the knowledge of plaintiff, cut the timber, and manufactured it into lumber, and sold the same, as the owner thereof, as if free from any claim or lien in favor of plaintiff, and as its regular course of business, from the time the contract was executed to September 24, 1896.

That the insolvent at all times during its operations under the con-, tract was in exclusive and undisputed possession of the product of the timber at its yards in Duluth, in all respects as the apparent owner thereof, as if free from incumbrance or claim of any kind.  That no part of the logs or lumber manufactured from the timber was ever set apart, separated, marked, or designated as in the contract provided, or otherwise, and that insolvent controlled and dealt with the same in all respects as its own property, all of which facts plaintiff at all times knew.  That the present existing creditors of the lumber company, to the amount of $40,000, gave credit to it without any notice of plaintiff's claim of title, and in reliance upon the apparent absolute ownership of the lumber company of the lumber so in its possession, and in the belief that it was such owner.

These allegations were put in issue by the reply.  On the trial and at the close of the evidence the trust company submitted to the court findings in its favor on these issues, which the court refused on the ground that they were immaterial, and the defendant excepted to the ruling as to each finding.  The trial court made findings in favor of the plaintiff, and ordered judgment accordingly, and the trust company appealed from an order denying its motion for a new trial.

The defendant assigns 72 alleged errors, but the only ones which we find it necessary to discuss are those relating to the refusal of the trial court to find upon the issues to which we have referred.  The evidence as to them was not such as to require the court to find thereon as requested in favor of the defendant; hence, if the trial court had simply declined to find as requested, it would have been necessary for the defendant, in order to base error on the court's refusal to find as to the issues, to have specially requested the court to find thereon one way or the other.  But the court having refused to find on the issues in favor of the defendant on the sole ground that they were immaterial, its counsel was not bound longer to contend with the court and request it to pass upon issues it had decided to be immaterial.  The trial court made no findings whatever as to these issues.  The question then is, were these issues immaterial?  The answer involves a consideration of three minor questions:  (a)  The construction of the contract.  (b)  The effect on the rights of the plaintiff of the alleged agreement to conceal the terms of the contract from the public, as against creditors of the lumber company trusting it, relying upon its apparent ownership of the lumber and its possession.

(c) If such creditors have any rights in the premises, can they be enforced in this action by the assignee?

1. Is the contract in question such a one as is required to be filed by the provisions of G. S. 1894, §§ 4129, 4148, relating to the filing of chattel mortgages and conditional sale contracts? This contract is dual in its character. It first provides for the sale of all of the standing pine timber on the land of the vendor described in the contract; with the right to enter, cut, and carry it away within a time limited, for a stated price, payable in cash, $250, and the balance in accordance with the terms of eight promissory notes. This much of the contract relates to the sale of an interest in real estate. Pine v. Tozer, 56 Minn. 288, 57 N. W. 796. But the contract assumes that, after the timber is severed from the land and goes into the possession of the vendee, it will become personal property, and the parties to the contract undertook by their agreement to deal with it as such for the purpose of securing the payment of the purchase price.

The terms of the contract as to the manufacture of the logs into lumber by the vendee, and as to keeping the logs separate, and the lumber and shingles made therefrom in separate piles, and marked; also the reservation of the title thereto until the purchase price is paid; and the further provision for the release of the lumber in blocks on payment of a stipulated price per thousand feet, were all to take effect after the timber had been severed from the freehold and had become personal property. After such severance, the contract, as to everything thereafter to be done, proceeds on the assumption that the timber, in its changed form, would be personal property, and secures the vendor by providing that the title to it, in its changed form, should be in him until paid for. In this respect the contract must be regarded as either a chattel mortgage to take effect when the timber should be severed, or a conditional sale contract, it matters not which, for in either case it should have been filed as required by statute. Jones, Chat. Mortg. 170, § 146; Wilson v. Fuller, 58 Minn. 149, 59 N. W. 988; Claflin v. Carpenter, 4 Metc. (Mass.) 580. A like construction was given to a similar contract in the case of Cadle v. McLean, 48 Wis. 630, 4 N. W. 755, and Bunn v. Valley, 51 Wis. 376, 8 N. W. 232; but a contrary view seems to have been taken in the later cases of Lillie v. Dunbar, 62 Wis. 198, 22 N. W. 467, and Bent v. Hoxie, 90 Wis. 626, 64 N. W. 426.

2. Although the contract was not filed, still a mere general creditor, who has not seized the mortgaged property by legal process, or acquired some lien upon it, cannot question the validity of an unfiled chattel mortgage or conditional sale contract otherwise valid. It is only a subsequent purchaser who acquired the mortgaged property while the mortgage was unfiled, or a creditor who laid hold of the property by legal process during such time, that can avoid the mortgage for the simple reason that it was not filed. Jones, Chat. Mortg. § 245. See, also, Ellingboe v. Brakken, 36 Minn. 156, 30 N. W. 659; Howe v. Cochran, 47 Minn. 403, 50 N. W. 368. The contract here in question was filed in the proper office nearly two months before the assignment was made; hence the title of the defendant assignee to the property in question is subordinate to the rights of the plaintiff under his contract, unless the contract was fraudulent in fact, or the plaintiff is estopped from asserting his title as against creditors who trusted the lumber company in reliance upon its apparent ownership of the property.

It was held in the case of Baker v. Pottle, 48 Minn. 479, 51 N. W. 383, that if a chattel mortgage is withheld from record, pursuant to an agreement between the parties to the mortgage, in order that the credit of the mortgagor may not be impaired, it would be a fraud as to any one who should become a creditor of the mortgagor while the mortgage remained unfiled, relying upon the false appearance of responsibility thus created; and as to such a creditor the mortgagee would be estopped, and his claim upon the property postponed to that of the creditor. Standard v. Guenther, 67 Wis. 101, 30 N. W. 298. See, also, Gill v. Griffith, 2 Md. Ch. 270; Blennerhassett v. Sherman, 105 U. S. 100. The same rule would apply to a conditional sale contract, for the injury to creditors resulting from the withholding of the instrument from record pursuant to the corrupt agreement would be the same in each case.

If the trial court had found in favor of the defendant in this case upon the issues in question, such finding would have justified the conclusion of law that the plaintiff was estopped to assert his title to the lumber which went into the actual possession of the lumber company, and which it dealt with as if it were the absolute owner thereof, as against creditors who gave it credit in reliance upon such apparent

ownership. Such a finding would bring this case within the principle, if not the letter, of the case of Baker v. Pottle. The issues, therefore, were not immaterial, and the court ought to have found upon them one way or the other.

Counsel for respondent insists that there was no evidence in the case which would justify findings in favor of the defendant upon these issues. But, unless the evidence was so conclusive against the defendant that the trial court was bound to find against it, the error of the court in refusing to pass upon the issues was not harmless. It is true, as claimed by the plaintiff, that there was no evidence tending to show that the alleged agreement to conceal from the public the interest which the plaintiff had in the lumber was for the expressed specific purpose that the vendee's credit might not be injured, but there was some evidence tending to show that the agreement was made in order not to injure or interfere with its business. It is also probably true, as claimed by counsel, that no creditor testified in express words that he trusted the lumber company in reliance upon its apparent ownership of the lumber; but several did testify that they trusted the company during the time the contract was unfiled, and knew that the lumber in question in this action was in the possession of the company, and that they then believed that it was free from incumbrances. Upon the whole evidence, we are of the opinion that it was not so conclusive against the defendant as to render the refusal of the court to find upon the issues harmless error.

3. Assuming that there are creditors as to whose claims equity will subordinate the title of the plaintiff in the lumber in the possession of the insolvent at the date of its assignment, can the defendant assignee assert and enforce such equity? Upon authority, the question must be, and is, answered in the affirmative. It cannot be regarded as an open question. Merrill v. Ressler, 37 Minn, 82, 33 N. W. 117; Thomas v. Foote, 46 Minn. 240, 48 N. W. 1019; Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696; Baker v. Pottle, supra. If there are any creditors in this case entitled to have the plaintiff's title to or lien on the property subordinated to the payment of their claims, such right can only be enforced through and by the assignee; for the property is in the custody of the court, and they cannnot seize it by legal process in order to assert their claim to it.

68 M—19

4. It follows that the refusal of the trial court to find upon the issues in question was error, for which a new trial must be granted. With reference to such trial, it is proper to state that we have considered without merit the claim of the defendant that the record shows that the plaintiff waived his reservation of title to the lumber until the purchase price was paid. Equally so is the claim that the complaint does not state facts sufficient to constitute a cause of action.

Order reversed and a new trial granted.

MITCHELL, J. I dissent, for the reasons: First, that the findings tendered by the appellant, if made, would not entitle it to recover; and, second, there was no evidence that would have justified any finding that would entitle it to recover. There was no evidence that the respondent had any actual intent to defraud any creditor of the lumber company by withholding his contract from record. It appears that respondent did not suppose that it was necessary to file such a contract. The most that can be claimed for the testimony of the lumber company's manager, Poole, who is evidently in sympathy with the appellant, is that the reason which he gave to respondent for not wanting it filed was that it might interfere with his sale of the lumber, by clouding the title, and had no reference to enabling the lumber company to contract debts on any false basis of credit.

There is no evidence that the lumber company was then insolvent, or that respondent had any reason to anticipate that it was liable to become so. It is true that some of the creditors of the lumber company testify generally that in giving it credit they were influenced by the belief that it was the owner of the lumber which it was sawing and had in its yards; but it is evident that they relied mainly on the general good credit of the company, and its prompt payment of its bills, without any inquiry or investigation as to the title of the property in its possession. The most that can be claimed for the evidence is that respondent, holding the title to the lumber to secure the unpaid purchase money of the timber, without any actual intent to defraud anybody, refrained, at the request of the lumber company, to file the contract until the latter had become indebted to other persons; such other indebtedness not being in the mind of either party at the time of the execution of the contract, and the respondent hav-

ing no knowledge or suspicion that the lumber company was insolvent, or likely to become so; those who credited the lumber company having done so in ignorance of the source whence, or the contract under which, it acquired the timber which it was manufacturing, but assuming, without investigation, that it owned it.

Expressions are to be found in some of the cases to the effect that a mortgagee who refrains from filing or recording his mortgage is estopped to assert it as against subsequent creditors who give credit to the mortgagor in ignorance of the mortgage, and upon the faith of the mortgagor having an unincumbered title to the property; but I think that it will be found that, in every well-considered case in which the mortgage has been held void as to creditors, who had acquired no specific lien on the property before the mortgage was filed or recorded, it was so held on the ground of fraud, and not upon any principle of mere equitable estoppel, as, for example, where the mortgagor was known to the mortgagee to be insolvent, and where it was arranged between them that the mortgage should be kept secret in order to give the mortgagor a fictitious credit.

Such a device is clearly fraudulent and void as to subsequent creditors, without the necessity of invoking any principle of equitable estoppel. Such was the case of Blennerhassett v. Sherman, 105 U. S. 100, cited in the opinion of the court. Baker v. Pottle, 48 Minn. 479, 51 N. W. 383, was a case of the same kind. The mortgagor, being insolvent or hard up, a fact known to the mortgagee, gave a mortgage on his entire property and business, which, by agreement between the parties, was kept from file, so as not to hurt the mortgagor's credit; in other words, in order to enable him to obtain credit on a fictitious basis. This constituted a clear case of actual fraud as to subsequent creditors, and the verdict to that effect was amply justified by the evidence on this ground. Standard v. Guenther, 67 Wis. 101, 30 N. W. 298, could have been properly decided, as it was, on the same ground; for we gather from the statement of the case that the mortgage was on the entire property and business of the mortgagor, which was known at the time by the mortgagee to be in a very embarrassed condition, and the mortgage was kept from the files so as not to injure the mortgagor's credit.

There are cases where the decision holding the mortgage fraudu-

lent as to creditors was affected by the provision of the national bankruptcy act then in force, making void any preference given within four months before the commencement of bankruptcy proceedings, and where the creditor kept his mortgage from record in order to keep his debtor afloat until the expiration of the four months. Folsom v. Clemence, 111 Mass. 273, was a case of this kind. But this can have no application, even under our insolvent law, to a case of a conditional sale, where the vendor retains the title to the property as security for the purchase money. I have found no well-considered case which holds that the mere withholding of a mortgage from record, even when it is done so as not to injure the credit of the mortgagor, has ever been held sufficient to avoid it as to subsequent creditors having no specific lien on the property, who have given credit to the mortgagor in ignorance of the existence of the mortgage.

It is not the mortgage, but the debt which it secures, which prevents creditors from getting their pay; and I can see no difference between concealing the existence of the mortgage and concealing the existence of the debt so as not to injure the credit of the debtor, and no one will argue that it is a fraud on other creditors for a creditor to conceal from the world the existence of his claim against his debtor. In brief, my opinion is that the ground upon which a mortgage can be thus avoided as to subsequent creditors is fraud, and not equitable estoppel; and, in order to render it so, there must be an actual intent to deceive and defraud prospective creditors, as, for example, a scheme to enable the debtor to incur debt which he has no reasonable prospect of paying, or at least, upon the principle that every one is presumed to intend the natural and probable consequences of his own acts, that the conduct of the mortgagee was such that he must be presumed to have intended such a result. For an exhaustive analysis of the cases on this subject, see Flemington v. Jones, 50 N. J. Eq. 244, 24 Atl. 928.