## McCABE BROS. COMPANY v. FARMERS GRAIN & SUPPLY COMPANY AND OTHERS.[1]

October 28, 1927.

Nos. 25,662, 25,667.

**Plaintiff's title upon execution sale was lost by its failure to redeem from foreclosure of a valid mortgage.**

The plaintiff entered a judgment against the defendant Farmers Grain & Supply Company, and it was a lien upon an elevator property which it owned. The plaintiff sold the property on execution and purchased. The defendant Anna M. Quevli had two mortgages of record, one of $1,100 and the other of $5,000, prior to the docket of the plaintiff's judgment. There was a judgment in favor of one Jandera prior to the two mortgages and to plaintiff's judgment. The two mortgages were assigned by Mrs. Quevli to a good faith purchaser who foreclosed, and the right acquired on the foreclosure passed to a bona fide purchaser. The theory of the plaintiff is that the $5,000 mortgage was fraudulently kept off record for the purpose of enabling the Farmers company to obtain credit, and that this was a fraud; that the $1,100 mortgage was without consideration and invalid; and that it is entitled to damages against Mrs. Quevli because its execution title was divested through her act in assigning the mortgages and permitting a bona fide purchaser to acquire title through a mortgage prior of record.

It is *held* that the evidence conclusively shows that the $1,100 mortgage was executed by the Farmers company to Mrs. Quevli to raise money to redeem from the Jandera execution sale. This mortgage was valid, its foreclosure divested the title of the plaintiff, and it has no cause of action for damages.

Mortgages, 41 C. J. p. 447 n. 46.

The plaintiff and the defendant Anna M. Quevli separately appealed from a judgment of the district court for Jackson county, Haycraft, J. Reversed.

*Kingman, Cross, Morley & Cant, Edwin D. Ford, and Faber & Grottum,* for plaintiff.

*E. H. Nicholas,* for defendant Anna M. Quevli.

[1] Reported in 216 N. W. 243.

DIBELL, J.

Judgment was entered in the district court of Jackson county in favor of plaintiff against the defendant Anna M. Quevli for $4,557.66 on December 1, 1925. The plaintiff appeals from the judgment, claiming that it should have been for a greater sum. The defendant Anna M. Quevli appeals, claiming that there should have been no judgment against her. Defendant Farmers Grain & Supply Company and Quevli Farms, Inc. did not appear below and are not now concerned with the litigation. The action was dismissed as to the defendants First National Bank and Andrew A. Quevli, and they are not parties to the appeal. The parties concerned in the appeal are the plaintiff, McCabe Bros. Company, and the defendant Anna M. Quevli.

The defendant Farmers Grain & Supply Company owned a grain elevator at Lakefield in Jackson county. On May 22, 1923, the plaintiff obtained and docketed a judgment for $3,963.21 against the company, which became a lien on the elevator.

On December 1, 1923, the elevator was sold for $2,500 on execution on this judgment, was purchased by the plaintiff, and after deducting expenses there was applied on the judgment $2,412.50. There was no redemption and the plaintiff became the owner of the property, but there were two mortgages recorded and a judgment docketed prior to the docket of its judgment which were apparently prior to its title. One mortgage was for $5,000, dated November 8, 1922, and was recorded on May 8, 1923. The other for $1,100 was dated, acknowledged and recorded on May 8, 1923. In both Mrs. Quevli was the mortgagee. The plaintiff purchased the property at the execution sale for less than the amount of the judgment, intending to attack the two mortgages as fraudulent. Its contention is that the $5,000 mortgage was kept off record by Mrs. Quevli, at the instance of the Farmers company, for the purpose of helping its credit, and that this constituted a fraud upon the plaintiff. The trial court so found. Both these mortgages were assigned to the First National Bank. The bank foreclosed and purchased at the foreclosure sale. Afterwards it sold the certificates of foreclosure

to Andrew A. Quevli. The bank was an innocent purchaser of the mortgages and Quevli was an innocent purchaser of the sheriff's certificate of sale. The plaintiff, who had not redeemed, lost its execution title. Its contention is that it lost its title through the passing of title to the mortgages to the bank, an innocent purchaser, and the passing of the foreclosure title to Quevli, also an innocent purchaser. The trial court adopting this theory gave it judgment against Mrs. Quevli for the amount of its judgment against the Farmers company.

For present purposes it may be conceded that the $5,000 mortgage was fraudulent as to the plaintiff for the reason it claims. See Baker v. Pottle, 48 Minn. 479, 51 N. W. 383; Clark v. B. B. Richards Lbr. Co. 68 Minn. 282, 71 N. W. 389; Bergin v. Blackwood, 141 Minn. 325, 170 N. W. 508. It is not necessary that we decide, for in our view the $1,100 mortgage was valid and the foreclosure of it divested the plaintiff's execution title.

The elevator property was sold to one Frank Jandera on June 23, 1922, on an execution in which he was plaintiff, for $974.64. When this judgment was docketed and became a lien does not appear, but in any event it was prior to the $5,000 mortgage and prior to the plaintiff's judgment. The time to redeem expired on June 23, 1923. Mrs. Quevli's money was used to make redemption in the name of the company. There is no question of it. If the redemption had not been made Mrs. Quevli would have lost her $5,000 mortgage and the plaintiff would have lost the lien of its judgment. There is no question of the validity or priority of the Jandera judgment. The $1,100 mortgage of May 8, 1923, was given by the company for Mrs. Quevli's money which made the redemption. This mortgage cannot be successfully assailed. It may be that the $1,100 which it represented was not paid until redemption on June 21, or it may have been held by the company from May 8. It may be that it was designedly made by the company and taken by Mrs. Quevli at a time when it would be ahead of the plaintiff's judgment. This did not make it fraudulent. It redeemed the property from the Jandera sale. The plaintiff was better off because of the mortgage and the

redemption from the execution sale. The fact that the $5,000 mort-gage was fraudulent gives the plaintiff no additional right. It bought the property on its execution sale. The character of its title depended upon the validity of the two mortgages. If either was valid it could protect its title only by redemption. The $1,100 mortgage was valid, and the plaintiff did not lose through a wrongful act of Mrs. Quevli.

Judgment reversed.