Wing, Respondent, vs. Thompson and others, Appellants.

*November 25 — December 16, 1890.*

*Logs and timber: Sale: Title retained by vendor until payment: Filing of contract: Notice to subsequent purchaser: Instructions to jury: Waiver of claim of title: Estoppel: Court and jury.*

1. By the terms of a contract of sale of standing timber it was to be cut and removed by the vendees and kept in their possession, but the title was to remain in the vendor until full payment was made.  *Held*, that the filing of the contract in the office of the clerk of the town where the trees were growing was not constructive notice of the vendor's rights to one subsequently purchasing from the vendee the lumber manufactured from such timber.

Wing vs. Thompson and others.

2. Nor was the filing of such contract in the office of the lumber inspector of the district notice to such purchaser.

3. There being no evidence that such purchaser knew that the contract was filed in the inspector's office, it was error to charge the jury that such filing might be considered as a fact tending to show that he had notice of the contract.

4. After stating that the contract had been filed in the town clerk's office for the purpose of giving notice that the vendor retained the title; that it had also been filed in the inspector's office; and that such filing in the inspector's office was not notice, but might be considered as a fact tending to show notice,— the court charged the jury that what he had said in relation to the inspector's office had nothing to do with what he had stated as to the filing of the contract in the town clerk's office. *Held*, that this was error, as the jury might have understood therefrom that the filing in the clerk's office was constructive notice.

5. There being evidence tending to show that the original vendor knew that his vendees had cut and removed the timber, sawed it into lumber, piled it up for sale, and sold or intended to sell part of it, and that he made no objection, the question whether he had waived his claim of title was one for the jury.

APPEAL from the Circuit Court for *Ashland* County.

Replevin for a quantity of pine lumber. The complaint was in the usual form, and the answer was a general denial. The following statement of the facts was prepared by Mr. Justice TAYLOR as a part of the opinion:

The material facts in this case are the following:

*First.* On December 1, 1885, *Wing*, the respondent, was the owner of certain lands, and the standing pine timber thereon. Rood & Maxwell were well-known lumber men, and were operating a large saw-mill at Washburn in this state, for the purpose of manufacturing and selling lumber. On said 1st day of December, 1885, *Wing* entered into a written contract with Rood & Maxwell, by which he sold to them all the pine timber standing on said lands. The following is a copy of said contract:

"This agreement, made this first day of December, 1885, by and between *Isaac H. Wing*, of Bayfield, Wis., party of

the first part, and Ebenezer H. Rood and John C. Maxwell, composing the firm of Rood & Maxwell, of St. Paul, Minnesota, parties of the second part, witnesseth: That said party of the first part, for and in consideration of the sum of seventeen thousand dollars, to be paid as hereinafter set forth, and the promises hereinafter made by said second parties, hereby sells, assigns, transfers, and conveys unto said parties of the second part all the merchantable pine timber now standing, lying, and being upon the following described tracts of land situated in Bayfield county, state of Wisconsin. [Description of lands omitted.][1] The said parties of the second part to cut and remove said timber prior to June 1, 1887, upon which date their right to enter said premises for such purposes shall cease. And in consideration of said sale and conveyance the parties of the second part hereby agree as follows: (1) That they will pay said party of the first part said sum of seventeen thousand dollars according to the terms of four certain promissory notes, bearing even date herewith, and executed by them to said party of the first part, namely, $4,666.66 on June 1, 1886; $4,666.66 on July 1, 1886; $4,666.66 on August 1, 1886; and $3,000 on September 1, 1886, with interest at the rate of eight per cent. per annum. (2) That they will mark all of the logs cut from the foregoing described lands with the following mark, the bark-mark thus,     , and the end mark thus, M, and that they will record said log-marks in the office of the lumber inspector of district number eleven, at Ashland, Wis., in the name of said party of the first part as security for the payment of purchase price aforesaid. And it is expressly understood by the parties hereto that the ownership of the title in and to the timber hereby sold and conveyed, and of the logs to be cut therefrom, and of the logs which have been so cut, shall not pass to said parties of the second part, but shall remain in said party of the

---

[1] The lands described are all in the town of Bayfield.— REP.

first part until the said sum of seventeen thousand dollars is paid in full. In witness whereof we have hereunto set our hands and seals this first day of December, A. D. 1885. Isaac H. Wing. [Seal.] Rood & Maxwell. [Seal.] In presence of Wm. F. Shea."

*Second.* Under this contract, Rood & Maxwell cut from said lands about 6,000,000 feet of logs, removed them to their mill at Washburn, and there sawed the same into lumber, and sold and delivered a large part of the lumber so sawed from said logs to the defendants, and received pay for the same from said defendants.

*Third.* The lumber sawed the first season was not all delivered to the defendants until the spring and summer of 1887, the last being delivered in June, 1887. Between 3,000,000 and 4,000,000 feet of this cut were delivered in the spring and summer of 1887.

*Fourth.* Before the 1st day of September, 1886, Rood & Maxwell paid the plaintiff all the money due on their said contract, except the $3,000 which became due September 1, 1886.

*Fifth.* The plaintiff was informed of the sale and delivery of the lumber cut in 1885 and 1886 to the defendants, and made no objection to such sale or delivery.

*Sixth.* When the $3,000 note became due and was unpaid the plaintiff surrendered the same to Rood & Maxwell, and took a new note for the same amount extending the time of payment for sixty days.

*Seventh.* In the logging season of 1886–87, Rood & Maxwell cut the balance of the timber on said lands of the plaintiff, being about 4,000,000 feet, and removed the same to their mill in the fall of 1887, and before the commencement of this action had sawed the greater part of the same into lumber.

*Eighth.* On the 15th of March, 1887, Rood & Maxwell entered into a contract with the defendants, of which the following is a copy:

"Articles of agreement made and entered into this fifteenth day of March, 1887, by and between Rood & Maxwell, of Washburn, Wis., lumber manufacturers, parties of the first part, and *C. C. Thompson & Walkup Company*, of Chicago, Illinois, lumber dealers, parties of the second part, witnesseth: That the said parties of the first part sell to the said parties of the second part about seventeen (17) millions feet, more or less, of the white pine lumber to be manufactured from the logs known as Sand River lot, and branded thus, $ and X, to the amount of about nine million feet, more or less, from the logs known as Redcliff and Buffalo Bay lot, branded thus, M. and 000, to the amount of about ten (10) million feet, more or less. It is understood and agreed that the said parties of the second part have the right and privilege of placing a man satisfactory to the said second parties at the foot of the log-slide to sort out and reject ten per cent. of the whole cut of the white pine logs of the above brands, as the said parties of the second part shall direct, and that the expense of the man thus employed shall be borne by the said parties of the first part. The lumber to be manufactured in a good and workmanlike manner, as directed by the parties of the second part from time to time, and to be cut full thickness for the size for which it is intended, and that the lumber shall be cross-piled loosely, the inch by itself, and the thick uppers and selects by themselves, at least thirty (30) days before shipment. All or any damage sustained by the lumber on account of poor piling, careless handling, or otherwise, the said damage is to be charged to the party of the first part. The said parties of the second part are to take all of the ten (10) foot and over merchantable lumber, according to Chicago or Muskegon cargo inspection of the afore-described lumber. The price to be paid for the above-described lumber is fifteen (15) dollars and twenty-five cents per one (1) thousand feet delivered upon the dock of the second parties at Chicago, Illinois. The lumber is to

be considered cash upon delivery upon the docks of the said parties of the second part, and the payment thereof to be made in cash or bankable paper, to suit the convenience of the said parties of the second part. In case the lumber is paid for before or after delivery, a regular interest account is to be kept thereof, and figured at the rate of six (6) per cent. per annum. It is understood and agreed that should the parties of the first part fail to deliver the lumber within reasonable time, then the parties of the second part are privileged to charter boats at the best possible rates to carry the said lumber. In consideration that any advances be made in this lumber before delivery, the parties of the first part shall keep a good and sufficient amount of insurance in favor of the party of the second part thereon. It is agreed that this lumber shall be inspected and tallied by a good and competent man favorable to both parties, and that the expense of such inspection shall be borne equally by both parties. It is agreed that the parties of the second part are to advance to said parties of the first part sixty (60) thousand dollars within thirty (30) days from the day and year above written, in notes of the said second party, and to advance to the said first party seven (7) dollars per one (1) thousand feet upon the lumber as soon as cross-piled to the amount of one million or more feet, that is, providing the said parties of the first part should so desire. In witness whereof we have hereunto set our hands and seals the day and year first above written. Rood & Maxwell. [Seal.]  C. C. Thompson & Walkup Co., Thomas Walkup, Sec'y.  [Seal.]"

The evidence tends to show that shortly after making the contract last mentioned, the said Rood & Maxwell made a supplementary contract with the defendants, which reads as follows:

"Whereas, a contract made on March 15th, A. D. 1887, by and between Rood & Maxwell, of Washburn, Wis., par-

ties of the first part, and *C. C. Thompson & Walkup Co.*, of Chicago, Ill., parties of the second part, said contract relating to logs and lumber and the delivering of the same and the payments thereon, witnesseth: It is hereby agreed by the parties of said contract of March 15th, A. D. 1887, that this is a supplement to said contract and a part of the same, and there being a clause in said contract as follows: 'It is understood that the said parties of the second part have the right and privilege of placing a man satisfactory to second parties at the foot of the log-slide to sort out and reject ten per cent. of the whole cut of the white pine logs of the above·brand, as the said parties of the second part shall direct, and that the expense of the man that is employed shall be borne by the said parties of the first part,' for and in consideration of one dollar ($1) paid to said Rood & Maxwell by said *C. C. Thompson & Walkup Co.*, the clause above quoted in said contract of March. 15, A. D. 1887, is void and of no effect, and that in place thereof, and in addition thereto, the said Rood & Maxwell have sold to said *C. C. Thompson & Walkup Co.* the ten per cent. of logs and lumber which was to have been thrown out, at ten dollars per thousand feet delivered in manner as per contract, the same as the other ninety per cent. had to be manufactured and delivered without separating except as to price; and it is further agreed that the said Rood & Maxwell shall not have the right to call for money or notes upon this ten per cent. for more than four (4) dollars per thousand feet, after the same has been sawed and placed upon the docks at Washburn, Wis., instead of seven dollars ($7) as is specified upon the fifteen dollar and twenty-five hundredths dollars lumber ($15.25) in said contract, being understood and agreed by the parties hereto that the title of all of said logs described in said contract, and amounting to about seventeen million feet, more or less, and the lumber manufactured therefrom, is in said *C. C. Thompson & Walkup Co.*, in consideration of

advances made them as per contract of March 15th, A. D. 1887. ROOD & MAXWELL. C. C. THOMPSON & WALKUP Co., by THOMAS WALKUP, Sec'y."

*Ninth.* The evidence also tends to show that in August the defendants advanced to Rood & Maxwell, upon the contracts above mentioned, the further sum of $25,000.

*Tenth.* Under these contracts of 1887, the said Rood & Maxwell were sawing and delivering to the defendants the logs cut from the plaintiff's lands in the season of 1886–87, and at the time this action was commenced had sawed all of said logs except about 1,000,000 feet.

*Eleventh.* On the 27th day of October, 1887, Rood & Maxwell failed, and the $3,000 note had not been paid. This action was commenced on the 3d day of November, 1887.

*Twelfth.* There was evidence tending to show that the plaintiff was informed by Rood & Maxwell, in the spring of 1887, that the lumber from their logs had been sold to the defendants, but no particulars of the nature of the sale were given to the plaintiff.

There was evidence given as to the condition of the logs taken from plaintiff's lands at the time of the commencement of this action. And there was some evidence introduced by the plaintiff, which he claimed tended to show that the defendants had knowledge of the contents of the contract between him and Rood & Maxwell as to this lumber, and as to the fact that Rood & Maxwell had not paid the amount due on their contract. On the part of the defendants, the evidence tends to show that they had no knowledge of that contract, and that they purchased the logs and lumber of Rood & Maxwell in good faith, supposing they had full power and authority to sell the same to them, and without notice of the contract between the plaintiff and Rood & Maxwell.

The case was tried by the court and a jury, and a verdict

was found in favor of the plaintiff, upon which judgment was entered, and the defendants appeal to this court.

For the appellants there was a brief by *T. R. Palmer* and *Bashford & O'Connor*, and oral argument by *R. M. Bashford*. They contended, *inter alia*, that the plaintiff, having acquiesced in the manufacture of these logs into lumber and in the sale thereof, cannot maintain this action as against innocent third parties. *Marsh v. Bellew*, 45 Wis. 36; *Lillie v. Dunbar*, 62 id. 198; *Hathaway v. Lynn*, 75 id. 186; *Ruege v. Gates*, 71 id. 634; *Kingman v. Graham*, 51 id. 232; *Brant v. Virginia C. & I. Co.* 93 U. S. 326; *Vilas v. Mason*, 25 Wis. 310; *Studdard v. Lemmond*, 48 Ga. 100; *Terre Haute & S. E. R. Co. v. Rodel*, 89 Ind. 128; *Jeneson v. Jeneson*, 66 Ill. 259; *Griffin v. Nichols*, 51 Mich. 575; *Cody v. Owen*, 34 Vt. 598; *T. & St. L. R. Co. v. Robards*, 60 Tex. 545; *Hervey v. Ill. Md. R'y*, 28 Fed. Rep. 169; *Blake v. Cornwell*, 65 Mich. 467; Bigelow on Est. (5th ed.), 660; *Peabody v. McGuire*, 79 Me. 572; *Winchester Wagon Works v. Conner*, 109 Ind. 31; *Preston v. Witherspoon*, 109 id. 457. The record in the town clerk's office could not be considered as notice to third parties of the plaintiff's claim under the circumstances of this case. He had consented to the removal of the logs to another town, to the manufacture thereof into lumber and the destruction of all marks of identity, and to the sale of the lumber. *Dows v. Kidder*, 84 N. Y. 121; *Parker v. Baxter*, 86 id. 586; *Farwell v. I. & T. Nat. Bank*, 90 id. 483; *Van Duzor v. Allen*, 90 Ill. 499; Benj. Sales, sec. 448.

For the respondent there was a brief by *Miles & Shea*, attorneys, and *H. H. Hayden*, of counsel, and oral argument by *Mr. Hayden*. They argued, among other things, that the plaintiff was the owner of a special property in all the logs to the amount of the unpaid purchase price, and that the defendants could not claim any greater or other interest in the timber or lumber than was actually vested

in Rood & Maxwell, unless they made their purchase from Rood & Maxwell with the knowledge and assent of the plaintiff. Of this there is no proof. *Lillie v. Dunbar*, 62 Wis. 198; *Porter v. Pettingill*, 12 N. H. 299.

TAYLOR, J. The learned counsel for the appellants assign several reasons why the judgment should be reversed. The first error assigned is that under all the evidence the court should have ordered judgment for the defendants. After a careful consideration of all the evidence, we think the court was right in refusing to direct a verdict for the defendants. There was some evidence in the case which, if it stood alone, might justify a verdict for the plaintiff, and whether he was entitled to recover was therefore a question for the jury.

The appellants assign as errors the refusal of the trial judge to instruct the jury as requested by the defendants, and also that certain instructions given to the jury were erroneous. There are two material issues in the case. The *first* is whether the defendants, at the time of making their contract with Rood & Maxwell, knew of the existence of the contract between plaintiff and Rood & Maxwell; and, *second*, if they knew such fact, then whether the plaintiff had permitted Rood & Maxwell to so deal with the logs and lumber in question as would amount to a waiver of his claim to hold the lumber in question under his contract as against these defendants.

It will be seen by an examination of the contract between plaintiff and Rood & Maxwell that it was clearly the intent of the parties thereto that Rood & Maxwell should have the right, at least, to cut and remove the timber from the lands described in the contract, and take and keep the same in their possession; and, looking at the other evidence in the case, it may be fairly inferred that said Rood & Maxwell were also to have the right, even before payment, to

manufacture the logs and timber into lumber at their mill, and there is simply a reservation in the contract of title in the plaintiff until payment is made. It may be premised that a contract of this kind is not favored in the law, and the right to enforce the reservations as against a *bona fide* purchaser without notice must be based upon evidence which shows that the plaintiff has not done anything in regard to such property while in the hands of his vendee which would amount to a waiver of his right or estop him from asserting his title against a purchaser from his vendee. It was material, therefore, for the defendants to show that they were purchasers without notice of plaintiff's claim.

The case was in fact tried upon that theory. It was claimed on the part of the plaintiff that filing the contract in the lumber inspector's office at Ashland was notice to the defendants, and if this was not notice the filing of it in the office of the town clerk of the town of Bayfield was notice. This claim of notice was disputed by the defendants, and we think, under the decisions of this court, neither filing was legal notice to the defendants. That the filing of this contract in the town clerk's office was not legal notice to the defendants was settled by this court in the case of *Lillie v. Dunbar*, 62 Wis. 198, 202, and cases cited on page 202; and that the filing of this contract in the inspector's office was not notice was settled in the cases of *Cadle v. McLean*, 48 Wis. 630, and *Bunn v. Valley L. Co.* 51 Wis. 376.

Upon the subject of notice by the filings of this contract, the learned circuit judge instructed the jury as follows, after having stated that this contract had been filed in the town clerk's office and in the lumber inspector's office, viz.: "That the filing of the contract in the inspector's office was not constructive notice, or any notice, of *Wing's* ownership of the logs as against other persons purchasing of Rood & Maxwell in good faith." The judge then added: "But you may consider that fact as a fact tending to show

that these defendants did have notice in the lumber inspec-
tor's office, notwithstanding that it is not proof of owner-
ship, if you find from the fact and circumstance, with other
facts and circumstances, that they were apprised of the fact
that *Wing* claimed an interest in this lumber in controversy."
To this the defendants duly excepted. The judge then in-
structed the jury as follows: "What I have said in relation
to the lumber inspector's office here has nothing to do with
what I stated to you in relation to a written contract having
been filed with the town clerk of Bayfield, where the plaint-
iff and vendor of this pine lived." This was also excepted
to by the defendants. We think both these instructions
were erroneous and misleading. There was no evidence
showing that the defendants had in fact any notice of the
filing of this contract in either the inspector's office or in the
office of the town clerk. It was clearly error, under that
state of the evidence, to instruct the jury that they might
consider the fact of the filing as evidence tending to show
that defendants knew of the existence of such contract.

The other instruction might well be understood by the
jury as an instruction that the filing of the contract in the
town clerk's office was at least constructive notice to the de-
fendants of its existence. It is true the learned judge had
not, in express terms, instructed that such filing in the
town clerk's office was constructive notice to the defend-
ants, but he had stated that "this written contract was
filed in the office of the town clerk of Bayfield for the pur-
pose of giving notice that the title was to be retained
(among other things) in the plaintiff." Then, after stating
that it was also filed in the inspector's office, and instruct-
ing the jury that such filing in the inspector's office was
not constructive or other notice to the defendants, he then,
after instructing in the language first excepted to, pro-
ceeds to say that what he had said about filing in the
inspector's office was not to apply to the fact that the con-

tract was filed in the town clerk's office. It seems to us that the learned judge intended to convey to the jury the idea that the filing in the clerk's office was notice to the defendants; at all events the jury might have so understood him. This was clearly an error, as above stated.

There was certainly considerable evidence given on the part of the defendants tending strongly to show that the plaintiff had so conducted himself in regard to these logs, after making his contract with Rood & Maxwell, as would estop him from insisting upon the reservation in his contract as against these defendants who had purchased these logs and the lumber manufactured from them of the said Rood & Maxwell, and they were entitled to have this question fairly submitted to the jury. Upon this question, the counsel for the defendants requested the learned judge to instruct the jury as follows:

" Such a waiver or license to cut, manufacture, and sell may be proved either directly or inferentially from the circumstances, like any other fact. It may be proved by express declaration, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage or lien, or by a course of acts and conduct, or by so neglecting and failing to act as to induce the belief that it was his intention and purpose to waive or license.

" (4) In determining the question of waiver or license, the jury are instructed that the plaintiff's permitting the logs to be removed from the town of Bayfield to the town of Washburn and permitting the logs to be manufactured into lumber, extending the time of payment of the last three thousand dollars, and failure to assert any claim to the logs or lumber for more than one year after the last note became due, is evidence tending to prove a waiver of lien and license, and permission to manufacture into lumber and sell."

These instructions were refused, and exceptions taken,

and upon that subject the learned judge gave the following instructions: ·

"The defendants also claim that the plaintiff, if he had any claim to the lumber in controversy, had waived his claim upon the lumber. If you find it to be a fact that he actually waived his claim to the lumber, taking into consideration all the facts and circumstances in the case, all the evidence that has been introduced here by the defendants, and also the testimony of the plaintiff, *Wing,* himself, then your verdict will be for defendants.

("You will remember that the title of the logs which were conveyed by the contract of Rood & Maxwell on the one part, and plaintiff, *Wing,* on the other, was retained by *Wing* — that there is an express provision to that effect — until the whole purchase price should be paid. Now if the logs were sawed into lumber by Rood & Maxwell, even with *Wing's* knowledge and consent, still the plaintiff, *Wing,* under this contract, would be the lawful owner of the lumber until the whole purchase price was paid, the plaintiff's lien having been reserved in the contract, he retaining therein the title to the logs or lumber until he was fully paid; and unless the plaintiff, *Wing,* afterwards released his title to the logs and lumber, he would continue to be the lawful owner of the same at the time this action was commenced, and entitled to recover the amount that was still due for the purchase price. If it was intended by this contract that Rood & Maxwell should remove the logs from the land — that is to say, by the contract entered into by Rood & Maxwell — and saw them into lumber at their mill, the mere fact that *Wing* knew of such removal and sawing and piling at their mill, and knew that they intended to sell or had sold them to be delivered on board boats, some of such lumber to the defendants, or to the *Thompson & Walkup Co.,* and did not object thereto, that would not be a waiver or abandonment of his lien upon all of the logs and lumber on the docks.")

The defendants excepted to this instruction, and the judge further instructed as follows:

.   .   .   ("But you may consider that fact as a fact tending to show that these defendants did have notice in the lumber inspector's office, notwithstanding that it is not proof of ownership, if you find from the fact and circumstance, with other facts and circumstances, that they were apprised of the fact that *Wing* claimed an interest in this lumber controversy.")

The defendants excepted to that part of these instructions included in parentheses. It is objected that these exceptions are too general, and should not be considered by this court. We think all that was said by the learned judge, in the first instruction above, was merely preliminary and leading up to what is stated at the end of the instruction, viz.: " The mere fact that *Wing* knew of such removal and sawing and piling at their mill, and knew that they intended to sell or had sold them to be delivered on board boats, some of such lumber to the defendants, and did not object thereto, that would not be a waiver or abandonment of his lien upon all the logs and lumber on the docks." Whether the facts stated in this instruction would be a waiver of the plaintiff's claim of title to the logs in question was, we think, a question of fact for the jury to determine, and not of law for the court, and was therefore erroneous. The facts proved on the trial clearly tended to establish the claim of waiver and estoppel, as insisted by the defendants, and the court should have submitted the question to the jury, without stating that as a matter of law those things did not amount to a waiver. That courts universally hold that the matters claimed to have been proved by the defendants in this case are competent evidence upon the subject of a waiver of the rights of the plaintiff reserved in his contract with Rood & Maxwell will be seen by an examination of the following cases, as well as of many others which might be cited: *Peabody v.*

The Ashland Street R. Co. vs. The City of Ashland.

*Maguire,* 79 Me. 572; *Winchester W. W. Mfg. Co. v. Carman,* 109 Ind. 31; Benj. Sales (3d Am. ed.), § 19, pp. 18, 19, and cases cited in notes.

For the errors above mentioned in instructing the jury the judgment must be reversed.

*By the Court.*— The judgment is reversed, and the cause is remanded for a new trial.

