Bent vs. Hoxie and others.

---

Bent, Respondent, vs. Hoxie and others, Appellants.

*September 4 — September 26, 1895.*

·(1) *Sale of standing timber: Reservation of title until payment: Filing of contract.* (2) *Mingling of goods: Replevin.*

1. A contract for the sale of standing timber, giving the vendee the right to cut and remove the same, and providing that the title shall remain in the vendor until payment of the purchase price,

is not, even after the cutting and removal of the timber, a con-
ditional sale of personal property nor a chattel mortgage, and
need not be filed as such under sec. 2314 or sec. 2317, R. S.

2. The owner of the lumber manufactured from logs which the man-
ufacturer had mingled with his own logs of the same quality, may
replevy out of the common mass of the lumber manufactured
from all of such logs a quantity not exceeding his contribution
thereto.

APPEAL from a judgment of the circuit court for Winne-
bago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This is an action of replevin to recover one and one-half
million feet of pine lumber which at the time of the com-
mencement of the action, to wit, September 6, 1890, was in
the possession of *Hoxie & Mellor.* The sheriff seized upon
the writ 1,263,236 feet of lumber, of the value of $9,336.85.
On the same day that this action was commenced, but after
the lumber had been seized upon the writ, *Hoxie & Mellor*
made a voluntary assignment for the benefit of creditors to
Charles V. Bardeen, who was made a party to the action
and upon whose resignation the defendant *Barnes* was ap-
pointed assignee and substituted as a party to this action.
The lumber replevied was by stipulation sold by the as-
signee, and the plaintiff obtained judgment against the as-
signee for the value thereof as before stated.

The action was tried by the court, trial by jury having
been waived. The evidence showed that plaintiff, on the 27th
of June, 1887, was the owner of a large tract of pine land
and that upon that day she entered into a contract in writ-
ing for the sale of all the pine timber upon said land to one
J. H. Weed, the purchase price being $20,000. This con-
tract provided that the plaintiff "has sold, and hereby does
sell, assign, and transfer and set over unto the party of the
second part, his executors, administrators, or assigns, all the
pine timber standing, growing, or being upon said premises
or any part thereof," with the right to enter on said prem-
ises for the purpose of removing said timber at any time

within five years. The contract further provided " that the title to the logs and timber and lumber manufactured therefrom shall be and remain in the party of the first part [the plaintiff]" until the purchase price of $10 per thousand, amounting in all to $20,000, is fully paid. Other provisions of the contract required Weed to pay all the taxes levied upon the pine lands in question before the time the timber should be removed therefrom and notice of such removal given to the plaintiff.

In December, 1888, Weed sold and assigned to *Hoxie & Mellor* all his interest in said contract by written assignment, and they assumed to carry out the terms of the contract. *Hoxie & Mellor* had a large lumber business at Antigo, Wisconsin, and in the state of Michigan. During the winter of 1889 and 1890, they cut from the lands of the plaintiff, under this contract, 2,600,000 feet of logs, which they mixed with 11,400,000 feet of other logs of about the same quality cut from land owned by said *Hoxie & Mellor,* called the Bryant logs, making a total of 14,000,000 feet of logs, which they cut and drew to Antigo to the mill of J. H. Weed, where during that winter and spring they were all manufactured into lumber. Of this lumber so manufactured 3,034,500 feet graded shop common and better, the balance being of inferior grades. All of the shop common and better had been sold by *Hoxie & Mellor* to the Antigo Lumber Company prior to September 6, 1890. On that date there was left in the possession of *Hoxie & Mellor*, in the yard at Antigo, about 10,000,000 feet of lumber, of which 48,000 feet was of the grade of shop common and the balance of the grades below shop common, which had been manufactured from said 14,000,000 feet of logs and which was piled separately according to its grade. This 10,000,000 feet of lumber was made up of lumber cut from the whole 14,000,000 feet of logs, so intermixed that the identity of the lumber cut from the *Bent* logs could not be determined. Of the

2,600,000 feet of lumber manufactured from the *Bent* logs, 910,000 was of the grade of shop common and better, and 1,690,000 feet was common lumber, and this last amount of common lumber was a part of the 10,000,000 feet of common lumber remaining in the plaintiff's yard on September 6, 1890, when this action was begun; but, as before stated, it was so intermixed with other lumber of the same grades that its identity could not be determined. On the 6th day of September aforesaid, there was due and unpaid of the purchase price of the lumber so sold by the plaintiff $10,336, and upon that day, as before stated, the plaintiff commenced this replevin action and caused to be seized out of the 10,000,000 feet of lumber aforesaid, 1,263,236 feet of lumber, all of which was of grades below shop common except 48,000 feet.

The circuit judge made findings of fact substantially in accordance with the facts above stated, and concluded that the plaintiff was entitled to judgment for the lumber replevied or its value, to wit, $9,336.85, and judgment was so rendered from which the defendants have appealed.

*Charles W. Felker*, attorney, and *Charles Barber* and *A. E. Thompson*, of counsel, for the appellant *Barnes*, contended, *inter alia*, that the contract must be treated as a bill of sale or conveyance of the property which has been replevied, with the mere reservation of a lien to the plaintiff for the amount due her upon the purchase price. *Wing v. Thompson*, 78 Wis. 256; *Lillie v. Dunbar*, 62 id. 198; *Bunn v. Valley L. Co.* 51 id. 376; *Cadle v. McLean*, 48 id. 635; *Hicks v. Smith*, 77 id. 146; *Golden v. Glock*, 57 id. 118. As soon as the timber was cut and converted into logs or lumber, it became personal property, and sec. 2317, R. S., at once became applicable. It then became a contract for the sale of personal property, the legal title to which was to remain in the vendor and the possession in the vendee. *Wadleigh v. Buckingham*, 80 Wis. 230. This contract, not having been

Bent vs. Hoxie and others.

filed, is void as against the assignee, and the property covered by it passed to the assignee upon the assignment. *S. L. Sheldon Co. v. Mayers,* 81 Wis. 627; *Batten v. Smith,* 62 id. 92; *Backhaus v. Sleeper,* 66 id. 68; *Wadleigh v. Buckingham,* 80 id. 230; *Valley Lumber Co. v. Hogan,* 85 id. 368. The lumber, having become part of a common mass, could not be taken upon the writ of replevin. See *Young v. Miles,* 20 Wis. 615; *Mowry v. White,* 21 id. 422; *Young v. Miles,* 23 id. 643; *Newton v. Howe,* 29 id. 531; *Eldred v. Oconto Co.* 33 id. 133; *Halpin v. Stone,* 78 id. 187; *George v. McGovern,* 83 id. 555.

*F. W. Houghton,* attorney, and *C. D. Cleveland,* of counsel, for the respondent, argued, among other things, that this is a sale of standing timber. *Daniels v. Bailey,* 43 Wis. 566; *Strasson v. Montgomery,* 32 id. 52; *Young v. Lego,* 36 id. 394; *Golden v. Glock,* 57 id. 118; *Lillie v. Dunbar,* 62 id. 198; *Crawford v. Witherbee,* 77 id. 419, 426; *Hirth v. Graham,* 50 Ohio St. 57, 64, and cases cited; *Larson v. Cook,* 85 Wis. 564. But even if it were not it would be good between the plaintiff and *Hoxie & Mellor* in this action, since the action was begun before the assignment. When a mixture of goods is wrongful and the goods of the innocent party cannot be identified, he can replevy his proportionate share, although the goods of the wrongdoer are of a better quality; but when the mixture is by consent one party may recover his proportionate share if the goods are all of the same value. *Young v. Miles,* 20 Wis. 615; *Newton v. Howe,* 29 id. 531; *Eldred v. Oconto Co.* 33 id. 133; *Young v. Miles,* 23 id. 643; *Halpin v. Stone,* 78 id. 183; *Esson v. Tarbell,* 9 Cush. 407.

WINSLOW, J. The contract in question was a contract for the sale of an interest in lands, with a reservation of title as security for the purchase money. The subsequent cutting of the timber did not change the character of the in-

strument. The necessary result is that it was not a conditional sale of personal property nor a chattel mortgage, and did not have to be filed in the office of the town clerk as required by secs. 2314, 2317, R. S. These questions were all, in effect, settled by the case of *Lillie v. Dunbar*, 62 Wis. 198, where the contrary intimations in the cases of *Cadle v. McLean*, 48 Wis. 637, and *Bunn v. Valley Lumber Co.* 51 Wis. 376, are disavowed.

It follows logically that the plaintiff retained the title to the lumber cut from her logs or so much thereof as remained unsold in the possession of *Hoxie & Mellor* until the whole purchase price was paid. There was due and unpaid on the contract, at the time of the commencement of the action, $10,336. *Hoxie & Mellor* had in their possession at that time ten million feet of lumber, of which 48,000 feet was above the grade of common lumber and the balance was common or below. This ten million feet was a mixture of lumber made from the *Bent* logs and the Bryant logs. To the mass of common lumber the *Bent* logs had contributed 1,690,000 feet. Out of this mass the officer seized 1,215,236 feet. To the lumber of grades better than shop common the *Bent* logs had contributed 910,000 feet, and the officer seized of this lumber only 48,000 feet.

It is argued that she could not replevin out of the common mass, and that she must find and identify the lumber made from her own logs. The case of *Young v. Miles*, 20 Wis. 615, seems to be a complete answer to this contention. The common mass was made up of lumber of the same quality and value drawn from two different lots of logs. The plaintiff's logs contributed to make up this common mass, and she replevins from it a quantity considerably less than her contribution. This she can certainly do. *Mowry v. White*, 21 Wis. 417. There can be no just complaint because she did not take all the lumber to which she was entitled.

It is said that the evidence shows that the plaintiff received the notes of *Hoxie & Mellor* in payment of the balance due on the contract. It is sufficient to say in respect to this contention that the circuit court found that there was due and unpaid upon the contract, at the time this action was commenced, $10,336. This finding is not excepted to and is a verity.

*By the Court.*— Judgment affirmed.