Hyland and another vs. Bohn Mfg. Co.

Hyland and another, Respondents, vs. Bohn Manufacturing Company, Appellant.

*November 14, 1895 — January 28, 1896.*

*Sale of timber: Reservation of title as security: Replevin: Judgment: Demand: Waiver.*

1. Vendors of standing timber who have retained the title to all logs cut and the lumber manufactured therefrom as security for the purchase money, may, after default in payment, maintain replevin to enforce that security; and where in such action the lumber replevied has been bonded by the defendant and disposed of, the plaintiffs, on bringing into court and surrendering the unpaid notes given for the purchase price, may have judgment for the amount due.

2. If, in such a case, the said notes were in fact deposited in court before a judgment was rendered, it is immaterial whether or not such deposit was made a condition of judgment in the order directing a verdict for the plaintiffs.

3. Where the vendors' agent went to the purchaser's mill after default in payment, forbade further shipments of the lumber, and took possession of it and placed it in charge of their employees, and the purchaser afterwards retook possession and recommenced shipments, denying the vendors' rights and by actual force overpowering their agent, no formal demand was necessary before bringing replevin.

4. After a default in payment, voluntary promises of forbearance for a time, without consideration, did not constitute binding extensions or a waiver of the right to take possession of the property.

Appeal from a judgment of the circuit court for Ashland county: John K. Parish, Circuit Judge. *Affirmed.*

This is a replevin action, brought to recover all the lumber, lath, and shingles situated in and about the mill of the *Bohn Manufacturing Company* in the town of Knight, county of Iron, and alleged in the complaint to be worth $30,000. The action was commenced on the 24th day of August, 1893, and an affidavit for immediate delivery was made and bond given, and the property taken by the sheriff,

whereupon the defendant gave bond for the return of the property, and took it and disposed of it.

Upon the trial of the case it appeared that on the 27th day of October, 1892, the plaintiffs, being the owners of certain pine lands, made a written contract with the defendant, by which they agreed to sell to the defendant all the pine timber standing upon the said lands for the sum of $58,000, to be paid in instalments as follows: $5,000 on January 10, February 10, March 10, April 10, and May 10, 1893; $10,000 on June 10, July 10, August 10, of the same year, and the final payment of $3,000 on September 10th, making in all $58,000. For these payments notes were to be given, drawing six per cent. interest from January 10, 1893. The remaining provisions of the contract were as follows:

" It is also further agreed that the title of all logs and lumber cut from logs from said lands shall remain in the parties of the first part until the full amount of the purchase price is paid, except as herein provided. It is further agreed that said party of the second part shall have the right to remove and sell said logs and lumber as fast as they shall have paid the said parties of the first part the sum of $15 per thousand feet. It is further agreed that said party of the second part shall mark all logs cut on said lands with an end mark and a bark mark as fast as the same are cut, and all lumber sawed from the said logs shall be piled and marked 'G. & J. H. H.;' that the log and end mark shall be the mark of the said first parties, and recorded as such. It is also further agreed that said party of the second part will insure said lumber against fire, to the full amount that shall be unpaid, in the name of the parties of the first part, and deliver the policies to them. It is also further agreed that the said party of the second part shall have three years to remove all of the pine timber from the above-described lands, by paying all taxes assessed against said lands after

the year 1892. It is further agreed that the giving of notes, as hereinabove provided, shall not be deemed payments until the notes respectively shall have been paid."

At the time of the making of the contract, negotiable notes were made and delivered to the plaintiffs, pursuant to its terms. The mill of the defendant company was in the locality of the timber, at which it was understood the logs were to be sawed, and defendant immediately entered upon the land and began cutting and hauling the timber to its mill and manufacturing it, with the knowledge and consent of the plaintiffs. The logs were marked with the plaintiffs' mark, and insurance was taken out upon the lumber, and the policies delivered to the plaintiffs, as agreed. The defendant company paid its notes promptly up to and including the note becoming due May 10, 1893, at which time it had paid $25,000 on the contract. The note of $10,000, due June 10, 1893, was not paid when due, and the plaintiffs agreed to wait until June 23d, on which day $5,000 was to be paid, and this payment was not made, but on June 30th the defendant sent the plaintiffs $1,000 to apply on the note, and it was received and credited, and July 10th the second note for $10,000 became due, but was not paid. On July 24th the defendant sent the plaintiffs a check for $5,000, but this check went to protest on the 22d day of July, because of the failure of the bank on which it was drawn. On August 10th $3,500 was paid on this check by the defendant, but no further payments were made upon the contract.

On August 8th the plaintiffs sent to the defendant's mill one Hazzard, for the purpose of taking charge of all the lumber that was there, and to stop any further shipments of lumber by the defendant. It appears by the testimony that Hazzard took charge of all the lumber there on behalf of the plaintiffs, and placed two men in charge of it, to look after it and watch it. This seems to have been acquiesced in by the defendant's employees at the time, and the men so

placed in charge remained at their post and in charge until the 19th of August following, when the defendant's employees recommenced the shipping of lumber. On the 21st day of the same month Hazzard went again to the mill, and on behalf of the plaintiffs forbade any further shipments, but the defendant's superintendent in charge refused to comply, and threatened to use force if necessary. Shipments continued until the 22d of August, when the plaintiffs replevied 100,000 feet of lumber contained in certain cars of the Northern Pacific Railroad Company, and on the 23d day of August they also replevied 45,000 feet of lumber contained in three other cars of said company, and on the 24th of August the present action was brought.

The first two actions last above referred to were consolidated and tried together, and verdict directed in favor of the plaintiffs, the value of the plaintiffs' interest in said property being fixed at $4,350. At the close of the testimony in the present action a verdict in favor of the plaintiffs was directed by the court, as follows: First, that the plaintiffs are entitled to the possession of the property described in the complaint; second, that the defendant unjustly took and unlawfully detained the same; third, that the value of the plaintiffs' special interest therein is the sum of $27,049.76, and the total value of said property is the sum of $30,000; fourth, that the plaintiffs' damages are six cents. This verdict was directed upon condition that plaintiffs bring into court the unpaid notes aforesaid, for delivery to the defendant in case the judgments in the various replevin actions were paid. The notes having been brought into court as required, and the plaintiffs having elected to take judgment absolutely for the value of the property and damages for its detention, judgment was rendered in favor of the plaintiffs, and against the defendant and the sureties upon defendant's undertaking, for the sum of $27,049.76 and six cents damages. From this judgment the defendant appealed.

For the appellant there was a brief by *J. J. Miles*, attorney, and a separate brief by *Harris Richardson* and *Warner; Richardson & Lawrence*, counsel, and the cause was argued orally by *Mr. Miles* and *Mr. Harris Richardson.* They contended, *inter alia*, that the various extensions were sufficient to estop the plaintiffs from ever claiming that they had not waived their rights arising from the defaults. *Hutchings v. Munger*, 41 N. Y. 155; *Farlow v. Ellis*, 15 Gray, 229; *Baker v. Bishop Hill Colony*, 45 Ill. 264; *McKinney v. Jones*, 55 Wis. 39; *Osterloh v. New Denmark M. H. F. Ins. Co.* 60 id. 126; *Webster v. Phœnix Ins. Co.* 36 id. 67; *Deyoe v. Jamison*, 33 Mich. 94; *Giddey v. Altman*, 27 id. 206. The question of waiver should at least have been submitted to the jury. *Wing v. Thompson*, 78 Wis. 256; *Marsh v. Bellew*, 45 id. 36; *Peabody v. Maguire*, 79 Me. 572.

For the respondents there was a brief by *Tomkins & Merrill*, and oral argument by *G. H. Merrill.*

The following opinion was filed November 26, 1895:

Winslow, J. This contract is, in substance, the same as the contract which was before us in *Bent v. Hoxie*, 90 Wis. 625. That the contract is a valid one, and that the vendors' rights may be enforced by replevin when the purchase money is in default, cannot be doubted after the decision which was made in that case, and which we have no disposition to review or modify. The plaintiffs, as they lawfully might do, retained the title to the logs and the lumber manufactured from the logs, as security for the purchase money. When the purchase price was in default, they brought replevin to enforce that security, and obtained the usual replevin verdict, by which their special property in the lumber was fixed at the amount due them on their contract. The lumber having been bonded by the defendant and disposed of, the plaintiffs brought into court and surrendered their notes, and recovered judgment for the amount of their debt. No reason

appears why they were not entitled to it. This is not an action brought to rescind the contract of sale, as seems to be supposed by the defendant, but an action to enforce that contract by a species of strict foreclosure of the security which the contract gives the vendors.

It is argued that no demand was made for the lumber before the action was begun, and so that the defendant was rightfully in possession. The uncontradicted testimony shows facts which were, in legal effect, the equivalent of a demand and refusal. The plaintiffs' agent went to defendant's mill after default, and forbade further shipments, took possession of the lumber, and placed it in charge of two men. The defendant, some days afterwards, retook possession, and recommenced shipments, denying plaintiffs' rights, and by actual force overpowered the plaintiffs' agent. After this a formal demand would be a useless ceremony.

It is said that the testimony shows an extension of the time of payment of the past-due notes, and a consequent waiver of the default which had occurred. There is no evidence which shows any binding contract of extension. The evidence tends to show some voluntary promises of forbearance for a time, without consideration. These promises certainly do not constitute binding extensions, nor did they preclude the plaintiffs from insisting on their rights upon the existing default whenever they chose to do so.

A motion was made on the eve of the argument by the appellant to send back the record for correction of the bill of exceptions, so that it should show that the written order directing a verdict, which appears in the record, was not in fact made until some time after the verdict was rendered; the contention of appellant being that the order directing a verdict, which was actually made, was oral, and did not require the deposit of the notes as a condition of judgment for the plaintiffs. It would be fruitless to send back the record for this correction, even if the fact was as appellant

claims, because the judgment shows that the notes were in fact deposited in court before judgment was rendered. This being the fact, it is now immaterial whether the condition was in the order for a verdict or not. Furthermore, the printed case, prepared by the appellant, refers to this order, and states in so many words that it was the order for verdict made by the court, so it is manifest that there is no surprise. The motion is evidently an afterthought, and it comes too late. It must be denied.

We find no error in the record.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied January 28, 1896.