BARDON and others, Appellants, vs. McCALL, interpleaded, Respondent.

*October 31 — November 16, 1900.*

(1) *Sale of standing timber: Retention of title as security: Sale by vendee: Garnishment of purchaser by vendee's creditors.* (2) *Federal courts: Receivers: Garnishment in state court.*

1. Standing timber was purchased under a contract providing that title and possession of the timber when cut should remain in the vendor until the whole contract price was paid. The purchaser sold a portion of the timber cut, and his vendees were garnished in an action against him before they had paid the purchase price and while they still retained possession of the timber. Before the garnishment they had been notified by the original vendor that he claimed the timber. More of the original purchase price remained unpaid than was due from the garnishees. *Held,* that the garnishment could not be maintained, and that it was immaterial that, after the service of the garnishee summons, the original vendor had transferred his rights, or what was the state of the accounts between his transferee and the principal defendant.

[2. Whether garnishment proceedings may be maintained in a state court against receivers appointed by a United States court, not determined.]

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

The plaintiffs on May 16, 1898, served a summons in garnishment against H. F. Whitcomb and Howard Morris, as receivers of the Wisconsin Central Railroad Company and of the Wisconsin Central Company, to charge them as garnishees in a suit against one Archie McKinnon. The garnishees answered that on March 17th they contracted with McKinnon for the purchase of 301 pieces of piling at the price of $525.80; that the same were delivered prior to the 12th day of April, 1898; that the price had not yet been paid; that on the 12th day of April one *Alex McCall* notified them that the piling was wrongfully cut and removed from real estate belonging to him, and was his property, and demanded that payment therefor be made to him; that on May 4th one A. D. Smith notified them that said piling was cut and removed from his real estate, and was his property; that on May 17th said Smith gave written notice to the garnishees that he had sold, assigned, and transferred all his interest in said piling to said *Alex McCall.* They denied any other liability, and interpleaded *McCall.* Issue was joined on the answer, and trial was had between plaintiff and *McCall,* first to the court with a jury. At the completion of the evidence the court concluded that the issue was for the court, and discharged the jury, and afterwards made findings.

It appeared on the trial that on January 17 and April 5, 1898, A. D. Smith, by two written contracts, sold to McKinnon the standing timber on premises described in each contract, giving to said McKinnon the right to cut the timber on the land, but providing that the title and possession of the logs and timber should remain in the party of the first part

until the whole contract price was paid. There was due Smith upon the first of these contracts about $1,100, and on the second $600. On May 17th, by a writing, said Smith, in consideration of $1,734.77, sold, granted, and conveyed unto *A. McCall* all logs, timber, and piles cut from the lands mentioned in the foregoing contracts, which were annexed, and all right which he (Smith) might have to seize the said timber for nonpayment of contract price, and to recover for any trespass by any one in removing tamarack piles, and to recover said piles from those in possession, and also assigned the contracts themselves. On the same day McKinnon transferred to *McCall* all of his rights in the logs and piling cut from the Smith land as security for various advances made by *McCall* to him in accordance with a previously existing contract and arrangement between them whereby he was to get out certain timber for *McCall; McCall* advancing certain specified sums of money, and paying such sums as necessary for stumpage and for lienable claims; and such contract providing that the title to the land or stumpage in all cases should be taken in the name of *McCall*, and be held by him as security for all his advances. An extended trial was had upon the state of the accounts between *McCall* and McKinnon on May 16, 1898.

The court found that the garnishee defendants, Morris and Whitcomb, were not indebted to the defendant McKinnon at the time of the garnishee summons, and had no property in their possession or under their control belonging to him. He also made findings upon *McCall's* right, under his contract with McKinnon, to have the title to all timber, lumber, etc., as security for advances which he was bound to make; that the contract for the Smith logs and timber was by mistake taken in the name of McKinnon, but that said *McCall* was the equitable owner, and that *McCall* was not indebted to McKinnon at the time of the service of the summons herein, or subsequent hereto, and had no property

belonging to said McKinnon, whereupon it was adjudged that the garnishee action be dismissed, from which the plaintiffs appeal.

For the appellants there was a brief by *Tomkins & Merrill*, and oral argument by *Geo. F. Merrill*.

*J. J. Miles*, for the respondent.

Dodge, J.  1. The greater part of the trial in the circuit court and of the briefs in this court were devoted to matters quite nonessential to the conclusion reached, namely, to the state of a long account between *McCall* and McKinnon at the time of the service of summons in garnishment upon Morris and Whitcomb as receivers.  All this is immaterial, for it appears that independently thereof no garnishable liability or property existed in the hands of the garnishees at the time of the service of the summons upon them.  The garnishing plaintiffs could, of course, stand in no better position as against the garnishees than could McKinnon himself.  They cannot recover upon their garnishment what he could not by direct action, except as his right of action might be merely delayed to a future time. *Healey v. Butler*, 66 Wis. 9, 16; *Edwards v. Roepke*, 74 Wis. 571; *Dowling v. Lancashire Ins. Co.* 89 Wis. 96.

The only thing upon which any liability of the garnishees is attempted to be predicated is the possession of 301 pieces of piling, for which they had made contract of purchase with McKinnon and had agreed to pay $525.80.  It is established without controversy that these pieces of piling had been cut from the land of one Smith under a written contract of authorization which expressly reserved title to himself until the full purchase price was paid.  Some $1,700 of purchase price remained unpaid.  As early as May 4th, twelve days before the service of the garnishee summons, Morris and Whitcomb had been notified of Smith's claim.  This was the situation on May 16th when the summons in garnishment was served.

It is now established beyond controversy in this state that a contract such as Smith gave to McKinnon is valid and that the legal title to the logs or other timber cut from such land remains in him, as a title to real estate, and that the transaction is not affected by sec. 2317, Stats. 1898, making void conditional sales of personal property. *Lillie v. Dunbar*, 62 Wis. 198; *Bent v. Hoxie*, 90 Wis. 625, 629; *Hyland v. Bohn Mfg. Co.* 92 Wis. 157. It is also established that the vendee under such a contract can confer on another only the title which he himself has, except perhaps to an innocent purchaser for value under such circumstances as to warrant conclusion of waiver or estoppel as against the holder of the legal title. *Lillie v. Dunbar, supra; Wing v. Thompson*, 78 Wis. 256. That situation did not exist between these parties; for the receivers had not, at the time of the garnishment, parted with anything of value in consideration of the attempted transfer to them. At that time, therefore, Smith had a perfect right to reclaim the piling in question, his unpaid purchase price exceeding the value thereof more than threefold. *Lillie v. Dunbar*, 62 Wis. 203; *Hyland v. Bohn Mfg. Co.* 92 Wis. 157. Had McKinnon attempted to bring suit for the contract price of this piling on May 16th, these rights belonging to Smith and insisted upon by him would have constituted a perfect defense. They would have established that no indebtedness existed from the receivers to McKinnon. This is conclusive against the maintenance of the garnishment, and it makes no difference that Smith afterwards transferred his rights, nor what may have been the state of the accounts between such transferee and McKinnon. The finding of the court that no indebtedness from the garnishees existed, and no property was held by them belonging to McKinnon, on the date of the garnishment, is sustained by undisputed evidence; and from it results, of necessity, the judgment dismissing the garnishee action.

2. An interesting question is raised as to the possibility of

maintaining garnishment against these receivers, appointed as such by one of the courts of the United States. The general principle that receivers, like other officers of court, are not subject to garnishment, is invoked, to which it is answered that the statutes of the United States (Act of March 3, 1887, and Act of August 13, 1888) have expressly made receivers appointed by United States courts subject to suit, without leave of court, in respect of any act or transaction of theirs in carrying on the receivership business. Whether this statute extends to the peculiar proceeding by garnishment, a method of equitable attachment, which our statutes declare, under certain circumstances, shall be deemed an action (sec. 2766, Stats. 1898), is an interesting question, but one which we do not feel called upon to decide, inasmuch as no liability is established and the construction of the federal statutes were better left with the United States courts unless necessity compels state courts to deal therewith. The subject has received consideration in *Irwin v. McKechnie,* 58 Minn. 145; *S. C.* 26 L. R. A. 218; *Central T. Co. v. E. T., V. & G. R. Co.* 59 Fed. Rep. 523; and in *Central T. Co. v. C., R. & C. R. Co.* 68 Fed. Rep. 685.

*By the Court.*— Judgment affirmed.