Mississippi River Logging Company, Respondent, vs. Miller and another, Appellants.

*January 12 — February 1, 1901.*

*Conditional sale of standing timber: Title not to pass until payment: Filing contract: Rights of* bona fide *purchaser: Estoppel.*

1. A contract for the sale of standing timber, providing that until all payments are made "the title, ownership, possession, and right of possession of said timber, or the lumber manufactured therefrom, wherever the same may be, shall be and remain" in the vendor, is a contract for the sale of an interest in land, and is not affected by sec. 2317, Stats. 1898, requiring the filing of conditional sales of personal property in order to make them valid as against third persons.

2. Such a conditional sale is valid and title remains in the vendor not only as against the vendee but also as against a *bona fide* purchaser from the vendee who has paid for the property without notice of the vendor's claim; but the vendor may, by his acts, be estopped from asserting his title as against such a purchaser.

3. The vendor under such a contract knew that the vendee was engaged in manufacturing and selling lumber, and that the timber conveyed was to be manufactured and sold, but gave immediate possession to the vendee and allowed that possession to be accompanied with all the *indicia* of title and apparent right to sell. He also made extensions of time for the payment of part of the purchase price, at one of which times he had express notice that the vendee was actively engaged in selling lumber. *Held,* that the vendor

Mississippi River Logging Co. vs. Miller and another.

was estopped from asserting his right as against a person who had purchased from the vendee in the ordinary course of business, without notice of the vendor's claim, and had paid the full purchase price before receiving any notice thereof.

APPEAL from a judgment of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Reversed.*

This is an action in trover to recover the value of a large quantity of lumber. The plaintiff is an Iowa corporation, and the defendants are a partnership doing business at Chicago, Illinois. The complaint alleges, in substance, that on the 22d of November, 1895, the plaintiff owned a number of sections of timber land (describing the same) in Lincoln county, Wisconsin; that on that day it entered into an agreement with the Illinois & Wisconsin Lumber Company, an Illinois corporation doing a general logging and lumber business at Merrill, Wisconsin, by which it sold all of the pine timber on said lands to said Illinois Company for $12,000, one half thereof to be paid May 1, 1896, and the remainder July 1, 1896, reserving the title and right of possession of said timber in itself until all payments had been made; that said Illinois Company cut 2,500,000 feet, or more, of timber from said lands in the winter of 1895 and 1896, and manufactured the same into lumber at its mill in Merrill, and turned the same over to the defendants, who shipped it out of the state and converted it to their own use; that on May 11, 1896, the Illinois Company paid $6,000 and interest upon said contract, and that on May 14, 1897, the balance due the plaintiff from the Illinois Company on said contract was $4,141.09, which sum is still due; that when the defendants purchased and paid for said lumber they knew the facts above stated as to the rights of the Illinois Company, and that the title and right of possession in said lumber was in the plaintiff, but that the defendants have refused to deliver said lumber to the plaintiff, or pay the plaintiff the balance due thereon, though requested so to do.

The answer, in effect, alleged that the plaintiff had realized enough upon the timber which was left on said lands by the Illinois Company to pay all that was due upon said contract; and, as a further defense, the answer alleged that the defendants purchased said lumber of the Illinois Company in good faith, without any information as to the plaintiff's alleged title, and that the plaintiff is estopped from asserting title to said lumber, because it put no marks thereon, and left the same in undisputed possession and apparent ownership of the Illinois Company, and allowed said Illinois Company to pile the same in its yard and intermix the same with its other lumber, and made no effort to preserve any lien thereon or give any notice to *bona fide* purchasers that said lien was claimed.

Trial by jury was waived. The evidence showed that the Illinois & Wisconsin Lumber Company, in November, 1895, was doing a logging and lumber business in Lincoln county, Wisconsin, and cutting pine timber upon its own lands in said county, and removing the same and manufacturing it into lumber at its sawmill at Merrill; that the pine lands of the plaintiff named in the complaint were in close proximity to the lands of the Illinois Company; that in November, 1895, Mr. F. Weyerhauser, the president and manager of the plaintiff corporation, called at the office of the Illinois Company in Chicago, and saw Mr. W. W. Schultz, the president of the Illinois Company, and agreed upon the terms of the sale of the standing pine upon the lands in question to said Illinois Company for $12,000, it being then understood that the Illinois Company wished to cut the timber immediately and get the logs out with their own logs, and that the agreement was to be reduced to writing after Mr. Weyerhauser returned from the East, where he was then going; that Mr. Weyerhauser returned from the East in January or February, 1896, and that upon his return the Illinois Company desired more time to cut and remove the timber; that

Mississippi River Logging Co. vs. Miller and another.

this additional time was granted by Mr. Weyerhauser by correspondence, and three years was given to cut and remove the timber on condition of the payment of the taxes on such lands as were uncut after May 1, 1897, but in other respects the terms of the oral agreement remained practically unchanged; that the written agreement was finally signed by both parties May 11, 1896, and is follows:

"Know all men by these presents, that the *Mississippi River Logging Co.*, a corporation of Clinton, Iowa, of the first part, for and in consideration of twelve thousand dollars, to be paid by the Illinois and Wisconsin Lumber Co., a corporation of Chicago, Ill., of the second part, have bargained, sold, granted, transferred, assigned, and conveyed, and by these presents do bargain, sell, grant, transfer, assign, and convey, unto the said party of the second part, its successors and assigns, all the pine timber standing, laying, or being upon the following described lands, to wit [description of lands omitted], with the right to enter upon said lands at any time within three years from date to cut and remove said pine timber. And it is expressly agreed that, until all payments hereinafter mentioned have been made, the title, ownership, possession, and right of possession of said timber and the saw logs which may be cut therefrom or the lumber manufactured therefrom, wherever the same may be, shall be and remain in the party of the first part. Said party of second part to pay taxes on all lands uncut after May 1, 1897, until cut and released by said second party. The said second party agrees to pay for said timber the aforesaid sum of twelve thousand dollars, with interest thereon at five per cent. per annum, payable $\frac{1}{2}$ May 1st, 1896, and $\frac{1}{2}$ July 1st, 1896. To have and hold the same unto the said party of the second part, its successors and assigns, forever. And it does, for its successors and assigns, covenant and agree to and with the said party of the second part that it is the lawful owner of said property; that the same is free from all incumbrances; and that it has good right to sell the same as aforesaid, and will warrant and defend the said property hereby sold unto the said party of the second part, its successors and assigns, against the lawful claims and demands of all persons."

It further appears that during the winter of 1895 and 1896, and prior to May 1st, the Illinois Company cut about

Mississippi River Logging Co. vs. Miller and another.

3,000,000 feet of timber from the lands in question, all of which it marked with its own recorded mark "box two" [2], and mixed the same with about 2,000,000 feet of its own logs, and shipped the same to Merrill, where the same was sawed, and mingled with its own lumber, and piled in its own lumber yard, so that it was impossible to separate or distinguish it; that on the 11th of May, 1896, the Illinois Company made the first payment of $6,000 with interest, and inclosed in the letter a list of the lands which had been cut and those which were still uncut, by which it appeared (as the fact really was) that the lands in sections 6 and 18 were still uncut; that on the 27th of June following the Illinois Company applied for a sixty-day extension of time in which to make the second payment, stating that only twenty or twenty-five per cent. of the logs had been cut (which was the fact), and that the balance would be removed during the coming winter; that an extension of time was granted by the plaintiff until September 1, 1896, by a letter dated July 8, 1896, and that between the middle of July and the middle of September, 1896, the Illinois Company cut from section 18 logs amounting to nearly 1,000,000 feet; that on September 21, 1896, the Illinois Company applied for further time to make the second payment, and stated in its letter that the greater part of the timber still remained uncut; that neither the plaintiff nor its officers knew that any logs had been cut during the summer, and that payment was not pressed, but the matter was allowed to run without definite extension of time until January 12, 1897, when the Illinois Company, being insolvent, made assignments for the benefit of its creditors, both in Illinois and Wisconsin; that the assignee of said company paid thirty per cent. in dividends to its creditors, but the plaintiff filed no claim.

It further appeared that July 29, 1895, the Illinois Company, by a written agreement, sold the lumber then in its

yard at Merrill, together with its entire cut for the year, to
the defendants, the same to be delivered in piles at the yard
in Merrill, and marked with the defendants' name, as fast as
1,000,000 feet was sawed and piled; that this contract was
renewed April 27, 1896, so as to cover upon the same terms
the entire cut of the mill in 1896, and pursuant thereto sub-
stantially all of the cut of 1896 was delivered to the defend-
ants as fast as it was sawed, and the defendants assumed
control thereof, and made payments from time to time, the
last final payment being made November 27, 1896; that the
defendants made no inquiry as to the title to any of the lum-
ber, and that the last-named contract contained a guaranty
by the Illinois Company that it had good title and would
protect the same from all claim; that the defendants had no
actual knowledge or notice, until making payment in full,
of the terms of the contract between the Illinois Company
and the plaintiff, and did not know that the plaintiff claimed
to own the lumber or claimed any lien thereon,— on the
contrary, that they bought and paid for the same in good
faith; that the defendant sold all of said lumber, which came
from the plaintiff's lands, and that the same was of the value
of $18,000; that the timber left standing upon the lands was
taken possession of by the plaintiff after the failure of the
Illinois Company, and sold, and the net proceeds applied
upon the unpaid contract with the Illinois Company, after
which application there still remained due upon said con-
tract $3,756.28; that no consent was given by the plaintiff
to the sale of the lumber, either in writing or by parol, unless
consent may be inferred from the facts stated, and that the
plaintiff first learned of the sale to the defendants after the
failure of the Illinois Company; that the plaintiff took no
steps to mark the logs in any way, or to ascertain what the
Illinois Company expected to do with the logs; that Mr.
Weyerhauser knew that the Illinois Company had a mill at
Merrill very soon after the shipping of the logs to Merrill

commenced, and knew that logs were being shipped there, but made no inquiries, and testified that he did not care anything about where the logs went; that January 26, 1897, the plaintiff demanded from the defendants the return of the lumber, or the amount due from the Illinois Company, which demand was refused, and this action brought.

These facts appearing either on the undisputed evidence or by the findings of the court, judgment was rendered for the plaintiff for $3,756.28, with interest and costs, and the defendants appeal.

For the appellants there were briefs by *Hurley, Ryan & Jones,* attorneys, and *Hooper & Hooper,* of counsel, and a separate brief by *Hooper & Hooper,* and oral argument by *M. A. Hurley* and *Ben. Hooper.* To the point that there had been an estoppel *in pais* they cited *Buchanan v. Moore,* 13 Serg. & R. 304; *Strong v. Ellsworth,* 26 Vt. 366; *Mitchell v. Reed,* 9 Cal. 204; *Quirk v. Thomas,* 6 Mich. 76; *Dezell v. Odell,* 3 Hill, 221; *Continental Nat. Bank v. Nat. Bank,* 50 N. Y. 575, and cases cited; Herman, Estoppel, § 775, and cases cited; *Frost v. Saratoga M. Ins. Co.* 5 Denio, 154; *Lucas v. Hart,* 5 Iowa, 415; *Dickerson v. Colgrove,* 100 U. S. 578; *Preston v. Mann,* 25 Conn. 118; *Anderson v. Hubble,* 93 Ind. 570; *Racine Co. Bank v. Lathrop,* 12 Wis. 466; *Vilas v. Mason,* 25 Wis. 310, 323; *Radant v. Werheim Mfg. Co.* 106 Wis. 600, and cases cited; *Gatling v. Rodman,* 6 Ind. 289; *Catherwood v. Watson,* 65 Ind. 576; *Richardson v. Chickering,* 41 N. H. 380; *Ashby v. Ashby,* 46 Atl. Rep. 522; Chitty, Cont. (11th ed.), 534; *Pickering v. Busk,* 15 East, 38; *Lewenberg v. Hayes,* 91 Me. 104; *Heath v. Stoddard,* 91 Me. 499; *Spooner v. Cummings,* 151 Mass. 313; *Winchester W. W. & M. Co. v. Carman,* 109 Ind. 31; *Frei v. McMurdo,* 101 Wis. 423; *Two Rivers Mfg. Co. v. Day,* 102 Wis. 333; *Neubauer v. Gabriel,* 86 Wis. 201; *Walker v. Grand Rapids F. M. Co.* 70 Wis. 92; *Wing v. Thompson,* 78 Wis. 256; Mechem, Agency, §§ 338, 773; *Bouck v. Enos,* 61 Wis. 660–664; 1 Parsons, Cont. 44; *Kasson v. Noltner,* 43

Mississippi River Logging Co. vs. Miller and another.

Wis. 650; *Lickbarrow v. Mason*, 2 Term, 70; *Hern v. Nichols*, 1 Salk. 289; *New York & N. H. R. Co. v. Schuyler*, 34 N. Y. 30, 69; *Preston v. Witherspoon*, 109 Ind. 457; *Parker v. Patrick*, 5 Term, 175; *Quick v. Milligan*, 108 Ind. 419; *Smith v. Shell Lake L. Co.* 68 Wis. 89.

For the respondent there was a brief by *Clapp & Macartney*, and oral argument by *N. H. Clapp*.

WINSLOW, J. The timber contract before us was a contract for the sale of an interest in land. Its terms are substantially identical with the terms of the contract involved in the case of *Bent v. Hoxie*, 90 Wis. 625. Whether the interest in the timber which was secured to the plaintiff be technically a reservation or an exception is a question of little moment. The contract secured to the plaintiff a paramount title to the timber until the purchase price was paid, which could be enforced by replevin as against the opposite party. These propositions are not open to doubt since the decision of this court in the case of *Lillie v. Dunbar*, 62 Wis. 198, which was followed by the cases of *Bent v. Hoxie, supra,* and *Hyland v. Bohn Mfg. Co.* 92 Wis. 157.

The Illinois & Wisconsin Company doubtless had an interest in the logs and lumber, but it was not a perfect title, but rather a right to acquire title by payment of the price, which right could not ripen into title as against its vendor until such price was paid. Not having title itself, it could not convey title. These general common-law principles governing conditional sales of personal property where title is not to pass until the purchase price is paid are supported by the great weight of authority. It is true that in many states, including our own, statutes have been passed requiring the filing or recording in some proper office of such conditional contracts of sale, in order to make them valid as against third persons (Stats. 1898, sec. 2317), but, as the sale here was a sale of an interest in real estate, instead of personal

property, this statute is of no moment, save, perhaps, that it impliedly recognizes the existence of a contrary rule at common law, and also indicates legislative dissatisfaction with such common-law rule, and the deliberate adoption of a radically different policy.

In the case of *Harkness v. Russell*, 118 U. S. 663, the subject of such conditional sales and the rights of vendor and vendee as well as of the vendee's creditors and transferees is learnedly discussed by Mr. Justice BRADLEY, and a great number of cases cited upon the subject from many states. The conclusion reached in the opinion is that, while there are some decisions (notably in Pennsylvania and Illinois) holding that an execution creditor or *bona fide* purchaser of a conditional vendee who is clothed with possession and apparent ownership of a chattel will be protected against the claim of the original vendor, still that such decisions are few in number compared with the overwhelming number which hold that, in the absence of fraud, conditional sales are valid and lawful as well against third persons as against parties to the contract. Among the states holding to the latter doctrine he enumerates Massachusetts, Connecticut, Maine, New Hampshire, Vermont, New York, Ohio, Indiana, Michigan, Missouri, and Alabama. It is to be noted that, so far as the rights of a *bona fide* purchaser are concerned, the discussion was practically *obiter*, because the purchaser in that case had full notice of the rights and claims of the vendor before he made his purchase (see close of the opinion in that case). But the case definitely settles and adopts the general principle that, in the absence of fraud, an agreement of conditional sale is valid as well against third persons as against the parties to the transaction, and that a bailee of personal property cannot convey the title, nor subject it to execution for his own debts, until the condition on which the agreement to sell has been performed.

We see no reason to question the correctness of the general

Mississippi River Logging Co. vs. Miller and another.

rule laid down in that case; indeed, it is substantially in accord with the doctrine of this court as announced in *Lillie v. Dunbar*, 62 Wis. 198; but it in no way trenches upon the equitable principles of estoppel. If it appear that the vendor under an agreement of conditional sale has so conducted himself in the transaction that it would be a fraud upon innocent third persons, who have purchased the property relying on the vendee's apparent title, to allow the vendor to assert his title upon the property, then the vendor will be estopped from asserting such title. We have found no case which denies this general proposition, and many of them either expressly or impliedly recognize it. The very case of *Harkness v. Russell*, so much relied on here, recognizes it by limiting the principle which it states to cases in which there is "absence of fraud." The question is, What facts will constitute an estoppel? It is quite generally held that the mere giving of possession to the vendee will not raise an estoppel. There must be something more than this. But if a vendor conditionally sells to a vendee goods, and gives him the *indicia* of ownership, with the agreement, express or implied, that he is to sell them as his own, then there can be little doubt but that the vendor will be estopped from asserting title thereto as against an innocent third person who has purchased of the vendee in ignorance of any infirmity or reservation of title. This becomes the case of one who has silently stood by and allowed another to deal with his property and sell it to a third person who advances his money in good faith. He has consented to the sale as effectively as if corporeally present, and will not be heard to retract his consent to the prejudice of him who has changed his position relying thereon.

This principle is not only well established by numerous authorities, but some of them are from states which hold the general principle laid down in *Harkness v. Russell*, 118 U. S. 663. Thus, in *Spooner v. Cummings*, 151 Mass. 313, the

plaintiff had sold a horse to one Pope under a conditional agreement that title should remain in plaintiff until the horse was paid for, and Pope, without paying for the horse, sold it to the defendant, who was an innocent purchaser. It was held that evidence tending to show that, according to the course of dealing between the plaintiff and Pope, it was expected that Pope was to resell the horse, was admissible, and that if it appeared that the plaintiff expressly or impliedly authorized the sale the defendant, having bought in good faith from the apparent owner, acquired a good title by estoppel.

So, in *Lewenberg v. Hayes,* 91 Me. 106, where the plaintiff, being a merchant, sold goods to the defendant's vendor (also a merchant) knowing they were to be put on sale, it was held that the defendant (an innocent purchaser) had a right to reply upon such apparent authority, and that the plaintiff was estopped from asserting a claim that he had not parted with title to the goods.

So, also, in *Winchester W. W. & M. Co. v. Carman,* 109 Ind, 31, it was held that a manufacturer and wholesaler of goods, who sells the same on credit and delivers them to a retail dealer for the express or implied purpose of resale, cannot reserve in himself the title which he can assert against innocent purchasers from such retail dealer. To the same effect are *Fitzgerald v. Fuller,* 19 Hun, 180; *Devlin v. O'Neill,* 6 Daly, 305.

Indeed, the proposition seems to be so clearly within the well-understood principles governing estoppel *in pais* that authorities upon the exact point are hardly necessary. Consult, also, *Leigh Bros. v. M. & O. R. Co.* 58 Ala. 165; 1 Benj. Sales (4th Am. ed., by Corbin), § 448, p. 412; *Pickering v. Busk,* 15 East, 38.

But it seems to have been considered that this question has been settled adversely to the defendants' contention by the case of *Lillie v. Dunbar,* 62 Wis. 198. That was an ac-

tion of replevin. The facts appearing from the case and briefs on file were that one Wilcox had bought of Lillie, by oral contract, a quantity of standing timber for $100, to be paid in the future, with the right to remove the same, but on condition that title should not pass until the purchase price was paid. Wilcox made a contract with Dunbar to cut and manufacture the timber into lumber and deliver it to Dunbar at certain prices, on which contract $300 was paid down. Wilcox cut and manufactured the logs, or a part of them, into lumber, and delivered the same to Dunbar. Wilcox did not pay Lillie for the logs. Lillie claimed that before Dunbar had paid Wilcox for the lumber, and while there was yet a considerable sum to come due, he (Lillie) notified Dunbar of his claim; but Dunbar claimed that Lillie simply inquired of him if Wilcox had left $100 there for him for timber sold. The case was submitted to the jury on the theory that it was a sale of personal property, and they were charged that the only question was whether Dunbar received notice of Lillie's interest in the property at the time of the purchase or before he paid for the lumber; and, if he did, then they were instructed that the plaintiff should recover, but if not, then the defendant should have a verdict. Upon this charge the verdict was for the plaintiff, thus, in effect, deciding that Dunbar had timely notice of Lillie's rights in the lumber. The answer in the case consisted simply of an admission of possession of the lumber and a denial of all other allegations of the complaint. There was no issue of estoppel raised in the case. Upon this state of the record the defendant appealed, and upon the appeal his principal contention was that the contract between Lillie and Wilcox was a conditional sale of personal property, and void as to Dunbar because not filed as required by the statute. Addressing itself to this proposition, the court held that it was erroneous, and that the contract was a contract for the conveyance of an interest in land, and hence not governed by the law

requiring the filing of contracts for the conditional sale of personal property, overruling certain remarks made in *Cadle v. McLean*, 48 Wis. 636, and *Bunn v. Valley L. Co.* 51 Wis. 376. In the opinion it was said that a purchaser from Wilcox could acquire only such rights as Wilcox actually had under his contract with Lillie. This was strictly correct, as applied to the facts of that case; but the fact that title might pass by estoppel was recognized in the opinion, for it was expressly stated that if Lillie knowingly, and without objection, permitted Wilcox to sell the property to a *bona fide* purchaser, he would undoubtedly have lost his right to claim the property as against such purchaser.

This case was followed by *Wing v. Thompson*, 78 Wis. 256, which was a case involving the rights of a conditional vendor of standing timber against a purchaser from the conditional vendee, the contract itself being substantially in the same form as the one now before us. In that case the defense of estoppel was relied upon by the defendants, and it was said in the opinion that "a contract of this kind is not favored in the law, and the right to enforce the reservations as against a *bona fide* purchaser without notice must be based upon evidence which shows that the plaintiff has not done anything in regard to such property while in the hands of his vendee which would amount to a waiver of his right or estop him from asserting his title against a purchaser from his vendee." The following instruction, proposed by the defendant, was refused: "In determining the question of waiver or license, the jury are instructed that the plaintiff's permitting the logs to be moved from the town of Bayfield to the town of Washburn, and permitting the logs to be manufactured into lumber, extending the time of payment of the last $3,000, and failure to assert any claim to the logs or lumber for more than one year after the last note became due, is evidence tending to prove waiver of lien, and license and permission to manufacture into lumber and sell."

On the contrary, the court charged that "the mere fact that Wing knew of such removal and sawing and piling at their mill, and knew that they intended to sell or had sold them, to be delivered on board boats, some of such lumber to defendants, and did not object thereto, that would not be a waiver or abandonment of his lien upon all the logs and lumber on the docks." This court said: "Whether the facts stated in this latter instruction would be a waiver of plaintiff's claim of title to the logs in question was, we think, a question of fact for the jury to determine, and not of law for the court, and [the instruction] was, therefore, erroneous. The facts proved on the trial clearly tended to establish the claim of waiver and estoppel, as insisted by the defendants; and the court should have submitted the same to the jury without stating that, as matter of law, those things did not amount to a waiver. That courts universally hold that the matters claimed to have been proven by the defendants in this case are competent evidence on the subject of waiver of the rights of the plaintiff reserved in his contract will be seen by examination of the following cases, as well as of many others which might be cited: *Peabody v. Maguire*, 79 Me. 572; *Winchester W. W. & M. Co. v. Carman*, 109 Ind. 31; Benj. Sales (3d Am. ed.), § 19, pp. 18, 19, and cases cited in notes." This opinion was written by the same justice who wrote the opinion in *Lillie v. Dunbar*, 62 Wis. 198, and in no part of the opinion is there any indication that he considered that the *Lillie Case* was thereby in any way overruled or limited.

We conclude, therefore, that there can be no question in this state but that a conditional vendor may, by his acts, be estopped from asserting his title as against a purchaser of his vendee; and the serious question in this case is whether the facts show such an estoppel. *Bardon v. McCall*, 108 Wis. 181. The simple principle is that if the conditional vendor, having given the vendee possession and apparent

authority to sell the property, either expressly or impliedly consent to such sale by his vendee, he will be estopped from asserting his rights to the injury of a purchaser who bought in the ordinary course of business, and paid for the property without notice.

Do the facts proven bring the plaintiff within this principle? In order to properly answer this question, a brief review of the main facts will be useful. The plaintiff's president, Mr. Weyerhauser, transacted all of the business on the part of the plaintiff. In November, 1895, the Illinois & Wisconsin Lumber Company was engaged in the logging and lumbering business, having pine lands in Lincoln county, and a mill at Merrill, and an office in Chicago. All these facts Mr. Weyerhauser knew at the time the negotiations commenced, except that he says that he did not know *where* their mill was, but admits that he learned that it was at Merrill after they began to cut logs. In November, 1895, knowing that the Illinois Company was manufacturing and selling lumber, he orally negotiated the sale of the logs in question to them. He was informed that they wanted to cut the timber right away and get it out with other timber which they had in the vicinity. Unquestionably he knew that it was the intention to manufacture and sell the lumber when manufactured, because that was their business, and any other conclusion would be absurd and an imputation upon his business sagacity. Knowing these facts, he took absolutely no measures to preserve anywhere any indication that the title to the logs remained in the plaintiff. He caused no mark to be put upon them, and, on the contrary, tacitly acquiesced in allowing the Illinois Company to mark them with their own mark, and this while knowing that they were to be mixed indiscriminately with the other logs of the Illinois Company. Knowing or having every reason to believe that they were to be manufactured into lumber, he took no measures to see that the lumber

Mississippi River Logging Co. vs. Miller and another.

was marked in any way so as to distinguish it, or even piled by itself, but tacitly allowed it to be mixed with other lumber, so that its identity was lost. It will hardly avail to say that he had no actual knowledge of what was done with the logs after they were cut, or that he did not know or care where they were going to, as he testifies in effect. Knowing that his logs were going into hands of manufacturers and dealers, it was clearly his duty to apprehend that in all human probability they were to be cut up and sold; and the fact that he turned his back and closed his eyes to the further proceedings will not excuse the failure to exercise those ordinary and obvious precautions which would suggest themselves to any mind, not only as a measure of safety to himself, but as means of preventing injury to others. In effect, the conclusion cannot be escaped that he sold to a manufacturer and dealer property which he knew was to be manufactured and sold, and which was within the ordinary business of the dealer to sell. He gave immediate possession, and allowed that possession to be accompanied with all the *indicia* of title and apparent right to sell; and we think that when, as appears in this case, the property has been sold in the ordinary course of business to a purchaser without notice of the plaintiff's claim, and who has paid the full purchase price before receiving any notice thereof, the principle that the plaintiff is estopped from asserting its claim must apply.

The extensions of time for the payment of the last half of the purchase money are also facts which have a bearing on the question. The last payment was to be made July 1, 1896, but it was extended until September 1st. At this time application was made for further extension, and it was granted by forbearance of any attempt to collect until after the failure in January, 1897. At the time of application for the last extension it appears also that the plaintiff had express notice that the Illinois Company was actively en-

gaged in selling its lumber. In the letter of September 21st the Illinois Company said, "The exceeding stringency in the money market has operated to compel us to carry and make extensions to parties owing us, and also to prevent our realizing on paper *which we are taking for the sale of stock*." Here, if never before, actual knowledge of the fact that the Illinois Company was engaged in the business of selling lumber was brought home to the plaintiff, and yet not only were no steps taken to ascertain the situation or give notice of the plaintiff's rights or claims, but forbearance was given for nearly four months, during which time the defendant paid a large part of the purchase money in ignorance of any adverse claim. It is true that the Illinois Company stated in a letter of June 27, 1896, that it would not remove the balance of the timber until the coming winter, and that a million feet was in fact cut in July and August, but we cannot regard this promise as excusing the plaintiff's lack of diligence. Summer logging is not infrequent, and it remained within the power of the Illinois Company under its contract to cut and manufacture at any time. The means of knowledge as to the actual fact were at hand. Good faith towards others, as well as due regard for its own rights, called for knowledge, or an attempt to acquire knowledge, instead of a studied endeavor to remain ignorant.

Under the facts shown, we think the court should have found as a fact that the plaintiff was estopped from asserting its title. Had the case been tried before a jury, the question would have been one for the jury under proper instructions, as held in *Wing v. Thompson*, 78 Wis. 256.

*By the Court.*— Judgment reversed, and action remanded with directions to render judgment for the defendants dismissing the complaint.